OPINION
{¶ 1} Ghassan Haj-Hamed, M.D. ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas that affirmed an order of the State Medical Board of Ohio ("board") that permanently revoked appellant's certificate to practice medicine and surgery in Ohio. Because the common pleas court did not abuse its discretion by affirming the board's order, we affirm the common pleas court's judgment.
 {¶ 2} After the Kentucky Board of Medical Licensure initiated disciplinary proceedings against Appellant in 2003, the board thereafter initiated its own disciplinary *Page 2 
proceedings against him, which later resulted in a consent agreement between appellant and the board in November 2003.
 {¶ 3} Under this consent agreement, appellant agreed to several probationary terms, conditions, and limitations which, among other things, provided that: (1) he would obey all federal, state, and local laws, and all rules governing the practice of medicine in Ohio; (2) he would not administer, dispense, prescribe, or personally furnish any controlled substances as defined by state or federal law; (3) upon request of an agent of the board, he would make his patient records available for review; and (4) he would limit his practice to his employment at Tri-State Urgent Care in Cincinnati, Ohio, where he would "be supervised and monitored on site at all times" by Tariq Sultan, M.D., who would "supervise and monitor Dr. Haj-Hamed and his medical practice" and "review 100% of Dr. Haj-Hamed's patient charts."
 {¶ 4} This consent agreement also provided:
 If, in the discretion of the Secretary and Supervising member of the Ohio Board, Dr. Haj-Hamed appears to have violated or breached any term or condition of this Consent Agreement, the Ohio Board reserves the right to institute formal disciplinary proceedings for any and all possible violations or breaches, including, but not limited to, alleged violations of the laws of Ohio occurring before the effective date of this Consent Agreement.
 If the Secretary and Supervising Member of the Ohio Board determine that there is clear and convincing evidence that Dr. Haj-Hamed has violated any term, condition or limitation of this Consent Agreement, Dr. Haj-Hamed agrees that the violation, as alleged, also constitutes clear and convincing evidence that his continued practice presents a danger of immediate and serious harm to the public for purposes of initiating a summary suspension pursuant to R.C. 4731.22(G). *Page 3 
 {¶ 5} On April 29, 2004, pursuant to the board's secretary and the board's supervising member's determination that by clear and convincing evidence appellant violated former R.C. 4731.22(B)[1] and that his continued practice presented a danger of immediate and serious harm to the public, the board, under authority provided in former R.C.4731.22(G), summarily suspended appellant's certificate to practice medicine and surgery. The board also ordered the immediate closure of appellant's medical offices and ordered the immediate referral of all active patients to other physicians.
 {¶ 6} That same day, by means of a "Notice of Summary Suspension and Opportunity for Hearing," besides informing appellant of the summary suspension of his certificate to practice medicine and surgery, the board also informed him that it intended to discipline him for alleged violations of the consent agreement. According to the board's notice, appellant allegedly violated the consent agreement because, among other things: (1) he had not been supervised by Dr. Sultan in the manner required by the consent agreement; (2) through his attorney, he failed to permit the board's agents to inspect patient records; and (3) he prescribed a controlled substance when he did not hold a valid Drug Enforcement Administration ("DEA") certificate of registration.
 {¶ 7} At an administrative hearing that followed, a hearing examiner determined that she lacked authority to enter a ruling as to the propriety of the board's summary suspension order. However, notwithstanding this determination, the state was permitted to proffer testimony and argument into the record as to the propriety of appellant's summary suspension. *Page 4 
 {¶ 8} Following an adjudication hearing, the hearing examiner issued a "Report and Recommendation," wherein she concluded, among other things, that: appellant knowingly and repeatedly violated terms of the consent agreement; he violated conditions of limitation placed by the board upon his certificate to practice medicine and surgery; he had proven himself to be unwilling to comply with the board's mandates; he was deceptive and obstructive in his dealings with the board; and the board could not effectively regulate him. The hearing examiner further concluded that permanent revocation was warranted.
 {¶ 9} On October 13, 2004, upon the motion of a board member, the board remanded the matter to a hearing examiner for the narrow purpose of considering: (1) whether the board's secretary and supervising member determined that there was clear and convincing evidence that appellant violated former R.C. 4731.22(B); (2) whether the board's secretary and supervising member determined that appellant's continued practice presented a danger of immediate and serious harm to the public; (3) whether the board's secretary and supervising member recommended suspension of appellant's certificate without a prior hearing; and (4) whether the board complied with other procedural requirements of the Ohio Revised Code in issuing the summary suspension order.
 {¶ 10} After another administrative hearing was held, a hearing examiner issued a "Report of Remand," in which the hearing examiner concluded that the board's summary suspension of appellant's certificate to practice medicine and surgery had been properly and lawfully issued in accordance with the requirements of former R.C. 4731.22(G).
 {¶ 11} On January 12, 2005, the board amended the hearing examiner's findings of fact in the "Report of Remand" to include findings that: *Page 5 
 1. The secretary and supervising member, at the time they made the recommendation to summarily suspend the license of Dr. Haj-Hamed, had clear and convincing evidence that Dr. Haj-Hamed had violated the terms of the consent agreement, and
 2. Therefore, his continued practice of medicine constituted a danger of immediate and serious harm to the public, as provided in the consent agreement.
Thereafter, the board ordered the permanent revocation of appellant's certificate to practice medicine and surgery in Ohio.
 {¶ 12} From the board's order of permanent revocation, appellant appealed to the Franklin County Court of Common Pleas. While appellant's appeal was before the common pleas court, he moved for a stay of the board's order of permanent revocation, and the common pleas court denied this motion.
 {¶ 13} From the common pleas court's judgment affirming the board's order of permanent revocation, appellant now appeals and assigns three errors for our consideration:
 I. THE COMMON PLEAS COURT ERRED BY ALLOWING AN ALLEGED UNCORRECTED "TYPOGRAPHICAL ER ROR" TO SUMMARILY SUSPENSION [sic] APPELLANT'S LICENSE TO PRACTICE.
 II. THE COMMON PLEAS COURT ERRED THAT APPELLANT ISSUED A PRESCRIPTION FOR A CONTROLLED SUBSTANCE AS ALLEGED BY THE BOARD. [sic]
 III. THE COMMON PLEAS COURT ERRED TO ALLOW THE BOARD TO VIOLATE IT [sic] RULES AND APPELLANT'S DUE PROCESS RIGHTS BY THE USE OF A SURPRISE EXPERT WITNESS. *Page 6 
 {¶ 14} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law.Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111;Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280.
 {¶ 15} In Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, the Supreme Court of Ohio explained what constitutes reliable, probative, and substantial evidence under R.C. 119.12:
 The evidence required by R.C. 119.12 can be defined as follows: (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Id. at 571. (Footnotes omitted.)
 {¶ 16} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' "Lies v. Ohio Veterinary Med.Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, at 111.
 {¶ 17} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med.Bd. (1993), *Page 7 66 Ohio St.3d 619, 621, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio explained:
 ** * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id. at 621. See, also, Smith v. State Liquor Control Comm. (Dec. 10, 1998), Athens App. No. 98CA03, at fn. 1.[2]
 {¶ 18} An appellate court does, however, have plenary review of questions of law. Chirila v. Ohio State Chiropractic Bd. (2001),145 Ohio App.3d 589, 592, citing Steinfels v. Ohio Dept. of Commerce,Div. of Securities (1998), 129 Ohio App.3d 800, 803, appeal not allowed (1999), 84 Ohio St.3d 1488.
 {¶ 19} In Pons, supra, the Supreme Court of Ohio further directed:
 ** * [W]hen reviewing a * * * board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reasons for this was noted in Arlen v. State
(1980), 61 Ohio St.2d 168, 173, 15 O.O.3d 190, 194, 399 N.E.2d 1251, 1254-1255: "`* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * *'" (Quoting Farrand v. State Med. Bd. *Page 8 
[1949], 151 Ohio St. 222, 224, 39. O.O. 41, 42, 85 N.E.2d 113, 114.
Id. at 621-622.
 {¶ 20} Appellant's first assignment of error asserts that the common pleas court abused its discretion by allowing an uncorrected "typographical error" to serve as grounds to summarily suspend appellant's license to practice medicine and surgery.
 {¶ 21} Division (G) of former R.C. 4731.22 provided:
 If the secretary and supervising member determine that there is clear and convincing evidence that an individual has violated division (B) of this section and that the individual's continued practice presents a danger of immediate and serious harm to the public, they may recommend that the board suspend the individual's certificate to practice without a prior hearing. Written allegations shall be prepared for consideration by the board.
 The board, upon review of those allegations and by an affirmative vote of not fewer than six of its members, excluding the secretary and supervising member, may suspend a certificate without a prior hearing. A telephone conference call may be utilized for reviewing the allegations and taking the vote on the summary suspension.
 * * * The order [of suspension] shall not be subject to suspension by the court during pendency of any appeal filed under section 119.12
of the Revised Code. If the individual subject to the summary suspension requests an adjudicatory hearing by the board, the date set for the hearing shall be within fifteen days, but not earlier than seven days, after the individual requests the hearing, unless otherwise agreed to by both the board and the individual.
 Any summary suspension imposed under this division shall remain in effect, unless reversed on appeal, until a final adjudicative order issued by the board pursuant to this section and Chapter 119. of the Revised Code becomes effective. The board shall issue its final adjudicative order within sixty days after completion of its hearing. A failure to issue the order within sixty days shall result in dissolution of the *Page 9 
summary suspension order but shall not invalidate any subsequent, final adjudicative order.
 {¶ 22} Here, in a file memorandum, the board's secretary and its supervising member stated that there was clear and convincing evidence that appellant violated former R.C. 4731.22(B)(16), and that his continued practice presented a danger of immediate and serious harm to the public. Under former R.C. 4731.22(B)(16), a certificate holder's failure to pay license renewal fees properly may be a basis for disciplinary action against a certificate holder.
 {¶ 23} Appellant claims that, prior to the board's summary suspension of his certificate to practice medicine and surgery, he had not failed to pay his license renewal fees, and he asserts that the board's secretary and its supervising member's recommendation for summary suspension therefore lacked a legitimate foundation. Appellant thus reasons that the board was without a justifiable basis to summarily suspend his certificate to practice medicine.
 {¶ 24} Appellant further asserts that the file memorandum constitutes the only evidence to support the board's secretary and supervising member's recommendation for summary suspension, that this file memorandum identifies division (B)(16) of former R.C. 4731.22 as the grounds for summary suspension, and that division (B)(16) is inapposite under the facts of this case. Therefore, appellant contends that the record lacks reliable, probative, and substantial evidence to support a summary suspension of his certificate to practice medicine and surgery. Additionally, because the board's order purportedly is not supported by reliable, probative, and substantial evidence, appellant further asserts that the common pleas court abused its discretion by affirming the board's summary suspension of his certificate to practice medicine and surgery. *Page 10 
 {¶ 25} The board asserts, however, that the board's secretary and supervising member's reference to division (B)(16) in the file memorandum was a typographical error. The board further asserts that other evidence establishes that division (B)(15) of former R.C. 4731.22, which permitted the board to discipline a certificate holder for violating conditions of limitations placed upon a certificate to practice medicine and surgery, was the actual basis for the board's secretary and supervising member's recommendation for summary suspension of appellant's certificate to practice medicine and surgery.
 {¶ 26} Appellant's claim that the file memorandum constituted the only evidence to support the board's secretary and supervising member's recommendation for summary suspension is not well-taken. Although the file memorandum is evidence that the common pleas court properly should have considered in its hybrid review, the common pleas court was not solely limited to the file memorandum when it considered appellant's claim that the board lacked an adequate basis to summarily suspend his certificate to practice medicine and surgery. See In re BoltonConvalescent Home v. Ohio Dept. of Human Services (Feb. 28, 1995), Franklin App. No. 94APE08-1228 (finding no abuse of discretion by a common pleas court because it looked to a report of final settlement when considering whether a waiver form constituted reliable, probative, and substantial evidence); see, also, R.C. 119.12 (providing that the common pleas court "may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law"); Conrad, supra, at 110-111. *Page 11 
 {¶ 27} In In re Bolton, a dispute arose concerning an audit of Medicaid-covered nursing home services. Relying on a waiver that the Department of Human Services asserted contained a typographical error, the appellant claimed that this waiver was the only reliable, probative, and substantial evidence in the record and that execution of this waiver created a binding contract that clearly and unambiguously indicated that money was owed to appellant, rather than to the Department of Human Services.
 {¶ 28} In In re Bolton, this court stated:
 We do not believe the trial court was constrained to accept appellant's assertion that the only reliable, probative, and substantial evidence was the waiver. An examination of the waiver itself indicates that it contains a request for implementation of the final settlement for the reimbursement period in question. Therefore, it was not an abuse of discretion for the trial court to find that the waiver requested implementation of the final settlement, and to look to the report of final settlement in determining that the $ 12,906.51 was due to ODHS and not appellant.
Id.
 {¶ 29} Applying the reasoning of In re Bolton, we cannot conclude that in this case the common pleas court was constrained to accept appellant's assertion that division (B)(16) of former R.C. 4731.22
constituted the foundation of the board's secretary and supervising member's recommendation for summary suspension of appellant's certificate to practice medicine and surgery. Furthermore, applying the reasoning of In re Bolton, we also cannot conclude that the common pleas court was solely limited to reviewing the file memorandum when it considered whether there was reliable, probative, and substantial evidence to support a finding that division (B)(15) of former R.C.4731.22, rather than division (B)(16), constituted the grounds for the board's secretary and supervising *Page 12 
member's recommendation for summary suspension of appellant's certificate to practice medicine and surgery.
 {¶ 30} As recorded in the minutes of the board's meeting of January 12, 2005, the recollection of Dr. Kumar, a board member, supports a conclusion that division (B)(16) was not the basis for the board's secretary and supervising member's recommendation to the board. These minutes state in part:
 Dr. Kumar stated that he very clearly remembers when this was discussed over the telephone conference. The matter of non-payment of dues didn't enter into the discussion. When he voted for the summary suspension at that time, the issue was not the non-payment of dues at all. It was for the fact that Dr. Haj-Hamed did not abide by the terms of the Consent Agreement. The summary suspension was strictly on that process. Dr. Kumar stated that the reference to (B)(16) in the memorandum in question was merely a typographical error.
 {¶ 31} Evidence documenting the format used during the telephone conference call where the matter of appellant's summary suspension was discussed with board members also supports a finding that division (B)(16) of former R.C. 4731.22 was not the basis for the summary suspension. According to this evidence, the president of the board informed board members:
 Proceeding with the business at hand, the Secretary and the Supervising Member of the State Medical Board have determined that, pursuant to the terms of the November 14, 2003, Consent Agreement between Dr. Haj-Hamed and the State Medical Board of Ohio, there is clear and convincing evidence that Dr. Haj-Hamed has violated Division (B)(15) of section 4731.22, Ohio Revised Code, and that his continued practice presents a danger of immediate and serious harm to the public. They therefore recommend that the Board suspend his certificate without a prior hearing. Copies of a proposed "Notice of Summary Suspension and Opportunity For Hearing" describing the basis for this determination have been distributed to all Board members. Each Board member *Page 13 
will now be given the opportunity to review the Proposed Notice.
 {¶ 32} Moreover, the testimony of William J. Schmidt, assistant executive director of the board, further supports a finding that violations of the consent agreement by appellant, and not his failure to pay license renewal fees, constituted grounds for the summary suspension of his certificate to practice medicine and surgery. Mr. Schmidt testified that on April 26, 2004, he and Doug Edwards, an investigator supervisor, went to the West Chester office of Tri-State Urgent Care after Mr. Edwards earlier had learned that Dr. Tariq Sultan's supervision of appellant did not appear to comply with the terms of the consent agreement because Dr. Sultan was not "on-site at all times" when appellant had been working at the clinic. (July 29, 2004 Tr., 213.) Mr. Schmidt testified that due to a disagreement with appellant's attorney concerning what steps were required for Mr. Schmidt and Mr. Edwards to have access to patient records, he and Mr. Edwards were denied access to patient records during this visitation to the clinic. (July 29, 2004 Tr., 216-218.)
 {¶ 33} Mr. Schmidt also testified that, on April 27, 2004, an investigative conference was held with appellant, the board's secretary and supervising member, among others, in attendance. (Nov. 9, 2004 Tr., 33-34.) After this investigative conference concluded, Mr. Schmidt met with the board's secretary and its supervising member, and Mr. Schmidt provided information that was collected during an investigation of appellant. (Nov. 9, 2004 Tr., 35-39, 63-66.) According to Mr. Schmidt, when he met with the board's secretary and supervising member, there was no evidence presented regarding appellant's failure to pay his license renewal fees. (Nov. 9, 2004 Tr., 100.) *Page 14 
 {¶ 34} Such testimony supports a conclusion that that appellant's failure to abide by limitations placed upon his certificate to practice medicine and surgery, a violation of division (B)(15) of former R.C.4731.22, constituted the basis for the board's summary suspension of appellant's certificate to practice medicine.
 {¶ 35} Finally, the notice that the board issued to appellant wherein the board informed him that the board's secretary and its supervising member determined by clear and convincing evidence that appellant violated division (B)(15) of former R.C. 4731.22, not (B)(16), and wherein the board outlined alleged violations of the consent agreement, also supports a conclusion that division (B)(15), not division (B)(16), served as the basis for the board's secretary and supervising member's recommendation for summary suspension of appellant's certificate. According to Mr. Schmidt, even though the board's secretary and supervising member had not seen a copy of this notice at the time that they made their recommendation to the board, the board's secretary and supervising member had reviewed information embodied in the notice. (Nov. 9, 2004 Tr., 91.)
 {¶ 36} In summary, because the file memorandum was not the only evidence that the common pleas court properly could consider in reaching its determination, we cannot conclude that the common pleas court abused its discretion by finding that an apparent typographical error in the file memorandum did not change the nature of the proceedings or the outcome of the disciplinary proceedings against appellant. Moreover, because evidence and reasonable inferences drawn therefrom support a view that the board's secretary and supervising member by clear and convincing evidence found a violation of division (B)(15) of former R.C.4731.22, and absent any showing that this evidence is not reliable, probative, or substantial, we conclude that the common pleas court did not abuse *Page 15 
its discretion by finding that reliable, probative, and substantial evidence supported the board's order of summary suspension.
 {¶ 37} Accordingly, for the reasons set forth above, we overrule appellant's first assignment of error.
 {¶ 38} Appellant's second assignment of error asserts that the common pleas court abused its discretion by finding that appellant issued a prescription as alleged by the board.
 {¶ 39} At an administrative hearing, Stephanie Sheard, a pharmacist and the pharmacy manager at a retail store, testified that on February 10, 2004, she received a prescription for a controlled substance, Lomotil, 2.5 mg. strength, by way of a telephone call from a person, who identified himself as appellant. (July 29, 2004 Tr., 39-40.) Ms. Sheard testified that, based on this telephone call from appellant, she generated a telephone prescription and wrote in a DEA number for appellant. (July 29, 2004 Tr., 40.) Ms. Sheard explained that "[a] lot of times prescriptions are phoned in via voicemail or even if prescriptions are handwritten and brought into the pharmacy by a guest, if there's a control on the prescription, sometimes it's either neglected by the doctor or the nurse with the DEA number on the prescription. So I obtained that from our pharmacy records and our computers." Id.
 {¶ 40} Later, on cross-examination, Ms. Sheard amplified her testimony, and testified that she was unsure whether she requested appellant's DEA number or whether she received it from the computer. (July 29, 2004 Tr., 51.) However, in her testimony, Ms. Sheard repeatedly testified that she took a prescription by telephone. (July 29, 2004 Tr., 52, 70-71.) *Page 16 
 {¶ 41} According to Ms. Sheard, the patient for whom the Lomotil had been prescribed later presented a handwritten prescription for Lomotil and another medication on the same prescription form. Ms. Sheard then made a note that only one prescription for Lomotil would be filled. (July 29, 2004 Tr., 43-44.) When questioned on cross-examination, however, Ms. Sheard conceded that in filling the telephone prescription and the handwritten prescription she probably made errors. (July 29, 2004 Tr., 67.)
 {¶ 42} According to Ms. Sheard, after board investigators contacted appellant, he contacted Ms. Sheard and informed her that he did not write a prescription for a controlled substance. (July 29, 2004 Tr., 45.) Ms. Sheard testified: "[Dr. Haj-Hamed] said he thought he wrote for Imodium. And Imodium and Lomotil are two totally different medications. So Lomotil is — is a control and Imodium is an over-the-counter product that is a noncontrolled substance. They are both to treat diarrhea, but they are not the same medication." (July 29, 2004 Tr., 45-46.)
 {¶ 43} For his part, appellant testified that he did not contact the pharmacy where Ms. Sheard worked by telephone to order a prescription for a patient. (July 30, 2004 Tr., 391.) Appellant testified:
 I don't know who talked to her, if somebody talked to her. She — She said I called her. If you ask my nurses, I never call in prescription myself. I usually have the staff do that, if I have to.
 And I'd like to know, did she answer the phone herself or somebody else did for her? And I'd like to know the name of who that staff that answered the phone. Because usually pharmacists do not answer the phone. The staff would. If we go back to that day, I would like to know who worked that day and who answered the phone and gave her the phone to say Dr. Hamed is on the line. *Page 17 
 I was telling that — Mr. Graff that I'm going to go to Cincinnati Bell and prove to you that there was no phone call came out of that location to that pharmacist. I'm positive.
(July 30, 2004 Tr., 391-392.)
 {¶ 44} Although appellant testified that he wrote medications and directions on a prescription form and gave this writing to a patient, he testified that he did not write a prescription for Lomotil. (July 30, 2004 Tr., 380, 382.) According to appellant, the writing, which was not a prescription, was "just a hint for the pharmacist and the patient to what to pick up." [sic] (July 30, 2004 Tr., 382.) Appellant further testified: "Otherwise, I would have signed it." Id.
 {¶ 45} Appellant also testified that he called Ms. Sheard after a board investigator had met with her. Appellant testified:
 I called and asked — I didn't know who the name. I said, "I want to talk to the manager there," because I want to know if I ever wrote controlled substance at that location. It happened that she is the one that talked to me that day.
 She said, "I'm the manager and I'm the one that filled that prescription." I said, "What's the patient name?" She gave me the name. I said, "Well, I want you to write down what happened." She said, "I already did and gave it to the investigator." I said, "Would you write it again for me?" She said, "No. I already did it once. I don't want to deal with it."
 But I said, "But you don't know I don't have a DEA number? Don't you know I don't have a DEA license? Don't you know I never wrote controlled substance? You're getting prescription for me for a few months. I never wrote controlled substance? Why now? Why the Lomotil?" She said, "Oh, I'm sorry. I didn't mean to cause trouble, but that's what happened. I thought it was you."
(July 30, 2004 Tr., 392-393.) *Page 18 
 {¶ 46} In Conrad, supra, the Supreme Court of Ohio instructed that in undertaking its hybrid form of review, a common pleas court "must give due deference to the administrative resolution of evidentiary conflicts." Id. at 111. The Conrad court explained:
 * * * For example, when the evidence before the court consists of conflicting testimony of approximately equal weight the court should defer to the determination of the administrative body, which, as the factfinder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. However, the findings of the agency are by no means conclusive.
 Where the court, in its appraisal of the evidence, determines that there exists legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of prior inconsistent statement, the court may properly decide that such testimony should be given no weight. Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order.
Id. at 111-112.
 {¶ 47} Here, the hearing examiner heard conflicting testimony from Ms. Sheard and appellant concerning whether appellant ordered a prescription for a controlled substance by way of a telephone call. The hearing examiner also had an opportunity to observe the demeanor of Ms. Sheard and appellant and had an opportunity to weigh the credibility of Ms. Sheard's testimony that appellant called the pharmacy and ordered a prescription for a controlled substance.
 {¶ 48} Applying the general principles set forth in Conrad, we cannot conclude that the common pleas court abused its discretion by not finding legally significant reasons for discrediting the testimony of Ms. Sheard. Accordingly, we cannot conclude that the *Page 19 
common pleas court erred by finding reliable, probative, and substantial evidence supported a conclusion that appellant issued a prescription for a controlled substance.
 {¶ 49} For the reasons set forth above, we therefore overrule appellant's second assignment of error.
 {¶ 50} Appellant's third assignment of error asserts that the common pleas court abused its discretion by finding that the board did not violate appellant's right to due process by permitting a "surprise witness" to testify.
 {¶ 51} "[T]he Due Process Clause provides that certain substantive rights — life, liberty, and property — cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct." Cleveland Bd. of Edn. v.Loudermill (1985), 470 U.S. 532, 541, 105 S.Ct. 1487. See, also,Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 422-423, citingDirect Plumbing Supply Co. v. Dayton (1941), 138 Ohio St. 540, 544
(stating that the "[t]he `due course of law' provision [in Section 16, Article I, of the Ohio Constitution] is the equivalent of the `due process of law' provision in the Fourteenth Amendment to the United States Constitution"); Chirila, supra, at 593, citing LTV Steel Co. v.Indus. Comm. (2000), 140 Ohio App.3d 680, 688 (stating that "[d]ue process rights guaranteed by the United States and Ohio Constitutions apply in administrative proceedings"); Althof v. Ohio State Bd. ofPsychology, Franklin App. No. 05AP-1169, 2007-Ohio-1010, at ¶ 13.
 {¶ 52} "`In a due process challenge pursuant to theFourteenth Amendment, the first inquiry is whether a protected property or liberty interest is at stake.'" Id. at ¶ 15, quoting State ex rel. Haylett v.Ohio Bur. of Workers' Comp. (1999), 87 Ohio St.3d 325, 331, citingAm. Mfrs. Mut. Ins. Co. v. Sullivan (1999), 526 U.S. 40, 59,119 S.Ct. 977, 989; *Page 20 Mathews v. Eldridge (1976), 424 U.S. 319, 96 S.Ct. 893. "[O]nce it is determined that the Due Process Clause applies, `the question remains what process is due.'" Loudermill, supra, at 541, quoting Morrisey v.Brewer (1972), 408 U.S. 471, 481, 92 S.Ct. 2593.
 {¶ 53} Here, as a licensed professional, appellant had a protected property interest in the practice of medicine and surgery. See Haver v.Accountancy Bd. Ohio, Franklin App. No. 05AP-280, 2006-Ohio-1162, appeal not allowed, 110 Ohio St.3d 1440, 2006-Ohio-3862, at ¶ 47 (concluding that revocation of a certified public accountant's certificate implicated a protected property right under the Fourteenth Amendment to the United States Constitution and under Section 16, Article I, Ohio Constitution); Althof, at ¶ 17 (concluding that a psychologist had a protected property right in the practice of psychology). AccordChirila, supra, at 596, citing Sohi v. Ohio State Dental Bd. (1998),130 Ohio App.3d 414, 422, dismissed, appeal not allowed (1999),85 Ohio St.3d 1407, certiorari denied (2000), 528 U.S. 1119, 120 S.Ct. 940
(finding that under the first fact of the test in Mathews, supra, the appellant had a protected property interest in his professional license); Carothers v. Ohio Bd. of Speech-Language Pathology andAudiology, Geauga App. No. 2004-G-2559, 2004-Ohio-6695, at ¶ 10, citingChirila, at 596, citing Sohi, at 422 (acknowledging "that an individual has a protected property interest in a professional license").
 {¶ 54} Recently, in Althof, this court observed:
 "`[D]ue process' is a flexible concept — that the processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur." Walters v. Natl. Assn. of Radiation Survivors (1985), 473 U.S. 305, 320, 105 S.Ct. 3180. However, "[f]or all its consequences, `due process' has never been, and perhaps can never be, *Page 21 
precisely defined. `[U]nlike some legal rules,' * * * due process `is not a technical conception with a fixed content unrelated to time, place and circumstances.' * * * Rather, the phrase expresses the requirement of `fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina (1981), 452 U.S. 18, 24, 101 S.Ct. 2153, rehearing denied, 453 U.S. 927, 102 S.Ct. 889. (Citation omitted.) "In defining the process necessary to ensure `fundamental fairness,' [the Supreme Court of the United States] [has] recognized that the Clause does not require that `the procedures used to guard against an erroneous deprivation . . . be so comprehensive as to preclude any possibility of error,' * * * and in addition [the Supreme Court of the United States] [has] emphasized that the marginal gains from affording an additional procedural safeguard often may be outweighed by the societal cost of providing such a safeguard." Walters, at 320-321. (Citations omitted.)
Id. at ¶ 14.
 {¶ 55} Here, the issue raised by appellant in his third assignment of error resolves to whether the common pleas court abused its discretion by finding that the hearing examiner did not act in a fundamentally unfair manner by permitting Timothy J. Benedict, assistant executive director of the Ohio Board of Pharmacy, who had not been identified as an expert witness by the state prior to the administrative hearing, to testify at an administrative hearing. At the hearing, over appellant's objections, Mr. Benedict testified as an expert witness for the limited purpose of establishing that the written instructions on appellant's writing were consistent with the dosing instructions for Lomotil and not consistent with the dosing instructions for Immodium. Prior to Mr. Benedict's testimony, the hearing examiner offered to continue the matter, and later granted a ten-minute recess. (July 29, 2004 Tr., 180, 182-183.) *Page 22 
 {¶ 56} Ohio Adm. Code 4731-13-18(D), effective February 28, 2004, provides in part:
 Upon written motion of a party or upon the hearing examiner's initiative, the hearing examiner shall issue an order setting forth a schedule by which the parties shall exchange hearing exhibits, identify lay and expert witnesses and exchange written reports from expert witnesses.
* * *
 (2) Absent extraordinary circumstances, the failure of a party to identify a lay or expert witness under the terms of the hearing examiner's order shall result in the exclusion of that witness' testimony at hearing.
 (3) Absent extraordinary circumstances, the failure of a party to produce a written report from an expert witness under the terms of the hearing examiner's order shall result in the exclusion of the witness' expert testimony at hearing.
 {¶ 57} Under Ohio Adm. Code 4731-13-18(G), "[a]ny witness who intends to testify as an expert, including the respondent, must submit a written report. A written report by an expert shall set forth the opinions to which the expert witness will testify and the bases for such opinions. This paragraph will not preclude the respondent from testifying as a fact witness."
 {¶ 58} In the present case, although the hearing examiner determined that Mr. Benedict's testimony would be relevant, the hearing examiner did not identify what "extraordinary circumstances" under Ohio Adm. Code4731-13-18(D)(2) existed to justify the state's failure to identify Mr. Benedict as an expert witness before the administrative hearing. Thus, we agree with appellant that the hearing examiner violated Ohio Adm. Code4731-13-18(D)(2) by failing to exclude Mr. Benedict's testimony as required under Ohio Adm. Code 4731-13-18(D)(2). *Page 23 
 {¶ 59} However, although appellant's claim that the hearing examiner violated Ohio Adm. Code 4731-13-18(D)(2) is well-taken, he fails to identify how the testimony of Mr. Benedict prejudiced him or how foreknowledge of Mr. Benedict's testimony would have benefited him in the preparation of his defense. Notwithstanding the hearing examiner's failure to comply with Ohio Adm. Code 4731-13-18(D)(2), absent any claim of identifiable prejudice by appellant, we cannot conclude that, under these facts and circumstances, the hearing examiner's violation of Ohio Adm. Code 4731-13-18(D)(2) necessarily constitutes a due process violation. See In re C.W., Medina App. No. 06CA003-M, 2006-Ohio-5635, at ¶ 9 (stating that "[t]o demonstrate a reversible denial of due process, as with any alleged error on appeal, an appellant typically must make a showing of identifiable prejudice").
 {¶ 60} To determine whether appellant's right to due process was violated, besides considering whether appellant has shown identifiable prejudice, we must also consider whether the procedure employed by the hearing examiner in this case involved such a probability that prejudice would result. See, generally, Estes v. Texas (1965), 381 U.S. 532, 542,85 S.Ct. 1628, rehearing denied, 382 U.S. 875, 86 S.Ct. 18 (stating that "[i]t is true that in most cases involving claims of due process violations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process").
 {¶ 61} Here, because the hearing examiner offered to continue the matter and granted a brief recess prior to Mr. Benedict's testimony, we cannot conclude that the procedure employed by the hearing examiner in this case was inherently lacking in due *Page 24 
process. Consequently, because we cannot conclude that the procedure employed by the hearing examiner was inherently lacking in due process, and absent any claim of identifiable prejudice by appellant, we cannot conclude that, under the facts and circumstances of this case, appellant was denied due process of law under the United States or Ohio Constitutions.
 {¶ 62} Accordingly, having concluded that appellant was not denied due process of law, we also cannot conclude that the common pleas court abused its discretion by finding that the board did not violate appellant's right to due process by permitting Mr. Benedict to testify.
 {¶ 63} For the reasons set forth above, appellant's third assignment of error is therefore overruled.
 {¶ 64} Accordingly, for the reasons set forth above, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 BRYANT and BOWMAN, JJ., concur.
BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Since April 29, 2004, R.C. 4731.22 has been amended several times. See (2004) Sub. H.B. No. 126, effective September 23, 2004; (2004) Am. Sub. S.B. No. 80, effective April 7, 2005; and (2006) Am. Sub. H.B. No. 530, effective June 30, 2006.
[2] In Smith, the Fourth District Court of Appeals observed that inBrown v. Ohio Bur. of Emp. Servs. (1994), 70 Ohio St.3d 1, reconsideration denied, 70 Ohio St.3d 1448, "the Ohio Supreme Court inexplicably deviated from its prior course by phrasing the standard of review facing the court of appeals as being whether the common pleascourt's decision was supported by reliable, probative and substantial evidence." Id. (Emphasis sic.)