OPINION
{¶ 1} This is an appeal by appellant, Joseph Ridgeway, M.D., from a judgment of the Franklin County Court of Common Pleas, affirming an order by appellee, State Medical Board of Ohio ("medical board"), imposing a suspension of appellant's license to practice medicine for an indefinite period, but not less than three months from the date of the order, and setting forth conditions for reinstatement.
 {¶ 2} Appellant, a radiologist, is licensed to practice medicine in Ohio and Indiana. On November 9, 2005, the medical board issued an order summarily suspending *Page 2 
appellant's certificate to practice medicine or surgery in the state of Ohio based upon the provisions of R.C. 4731.22(B)(26). On that same date, the medical board sent written notice to appellant informing him of the board's order. On November 14, 2005, appellant requested a hearing before the medical board regarding the license suspension.
 {¶ 3} On November 28, 2005, a hearing was conducted before a medical board hearing examiner. A number of witnesses, including appellant, testified during the hearing. The following factual background relating to the suspension of appellant's medical license is based upon testimony and exhibits presented at that hearing.
 {¶ 4} Appellant began drinking alcohol in high school at age 17. In 1989, appellant graduated from the Ohio State University College of Medicine. He finished a residency program in 1994, and began private practice in 1995.
 {¶ 5} In February of 1992, appellant was charged with driving under the influence of alcohol ("DUI"). Appellant refused to take a breathalyzer test at the time of his arrest. He subsequently entered a guilty plea and was convicted of the charge. During his testimony before the medical board hearing examiner, appellant stated he had been drinking a "small amount" of alcohol on the evening he was arrested, but he did not believe he was actually under the influence at the time. (Tr. Vol. I, at 49.)
 {¶ 6} In the summer of 1993, appellant was in a vehicle with another individual at a park in Grandview, Ohio, when a Grandview Police Officer questioned him about whether he had consumed alcohol that evening. Appellant refused a breathalyzer test, and he was charged with DUI. The charge was eventually reduced to reckless operation, and appellant entered a guilty plea to that charge. As a result of the plea, appellant was ordered to undergo counseling for alcohol dependency. *Page 3 
 {¶ 7} In 2002, appellant, while driving in Whitehall, was stopped by a police officer after the officer observed appellant's vehicle weaving. Appellant refused a breathalyzer test, and he was arrested and charged with operating a vehicle while under the influence ("OMVI"). Appellant subsequently entered a guilty plea to reckless operation on the advice of his legal counsel. During the medical board hearing, appellant acknowledged having "[p]robably three or four drinks" on the evening of that incident, but he did not believe he was drunk at the time. (Tr. Vol. I, at 61.)
 {¶ 8} Following this incident, appellant attended an alcohol program at Talbot Hall, The Ohio State University (hereafter "Talbot Hall"), where he was diagnosed with alcohol abuse. Appellant signed an outpatient participation agreement, under which he agreed to abstain from alcohol and to attend an intensive outpatient program meeting three times per week. A case manager at Talbot Hall prepared a report which included the following comments:
 Client has self-diagnosed as a substance abuser rather than dependent. He can identify two of the 7 criteria for a diagnosis of dependency. There is a third criteria that he meets, yet he cannot see it. That is the need to control his drinking. If he fails, he has crossed the line to dependency. * * *
(State's Exhibit No. 4, at 5.)
 {¶ 9} In October of 2004, while driving in Indiana and accompanied by his wife and four-year-old daughter, appellant was stopped by a police officer for speeding. He was charged with DUI and child endangerment when it was discovered he and his wife had been consuming wine from a bottle during the trip from Ohio to Indiana. In his testimony before the hearing examiner, appellant acknowledged he had been drinking a *Page 4 
"small amount" of alcohol that evening. (Tr. Vol. I, at 72.) Appellant and his wife spent the evening in jail, while their daughter was taken into protective custody for the weekend.
 {¶ 10} In 2005, appellant was charged with domestic violence, and he completed an anger management assessment. On August 22, 2005, appellant entered a treatment facility, The Woods at Parkside (hereafter "Parkside"), where he underwent a 72-hour impairment assessment. According to appellant, he agreed "voluntarily to undergo an assessment" after a discussion with an investigator regarding alcohol-related driving incidents. (Tr. Vol. I, at 39.) When he left the facility on August 25, 2005, appellant did not believe he had been diagnosed as an alcoholic.
 {¶ 11} Dr. Edna Jones, the medical director at Parkside, issued a final written report on October 8, 2005 regarding appellant's treatment at Parkside. In that report, Dr. Jones opined that appellant met the criteria for statutory impairment. Dr. Jones further opined appellant was in denial, and that he required treatment and monitoring.
 {¶ 12} On January 23, 2006, the medical board hearing examiner issued a report and recommendation, finding evidence that appellant was appropriately diagnosed with alcohol dependency, and that his conduct constituted "[i]mpairment of ability to practice" due to excessive use or abuse of alcohol. The hearing examiner also rejected appellant's contention that patient harm is required before a summary suspension. The hearing examiner recommended a proposed order that appellant be suspended for an indefinite period of time, but not less than 30 days from the effective date of the order.
 {¶ 13} On February 2, 2006, appellant filed objections to the report and recommendation of the hearing examiner. On February 8, 2006, the medical board met to consider the matter. Following deliberations, the medical board voted to amend the *Page 5 
proposed order to increase the minimum suspension period to three months. The medical board also found that there existed clear and convincing evidence, at the time of the issuance of the summary suspension, that appellant was in violation of R.C. 4731.22(B)(26). On February 8, 2006, the medical board issued an order suspending appellant's license for an indefinite period, but not less than three months from the date of the order.
 {¶ 14} On March 20, 2006, appellant filed an appeal with the trial court from the order of the medical board. The trial court rendered a decision on April 13, 2007, finding that the order of the medical board was supported by reliable, probative, and substantial evidence, and was in accordance with law.
 {¶ 15} On appeal, appellant, pro se, sets forth the following six assignments of error for this court's review:
 First Assignment of Error: The trial court erred and abused its discretion in determining that the board order was supported by the statute in accordance with the law.
 Second Assignment of Error: The trial court erred and abused its discretion in determining that the evidence in this case is reliable, probative and substantial.
 Third Assignment of Error: The trial court erred and abused its discretion by allowing the plaintiff's fundamental and constitutional right to the presumption of innocence to be denied at every level in the proceedings of this case.
 Fourth Assignment of Error: The trial court abused its discretion in denying the plaintiff's motion to introduce critical additional evidence.
 Fifth Assignment of Error: The trial court erred in its assumption that the defendant medical board possesses "special expertise" beyond the level of the court. *Page 6 
 Sixth Assignment of Error: The trial court abused its discretion in failing to determine that the inappropriate summary suspension was prejudicial to the plaintiff with regard to the administrative hearing and subsequent board determination.
 {¶ 16} Pursuant to R.C. 4731.22, the medical board is authorized "to enforce the provisions of R.C. Chapter 4731, to investigate violations thereof, to conduct disciplinary proceedings, and to discipline those persons within the Board's licensing authority." State ex rel. Gelesh v.Ohio State Med. Bd., 172 Ohio App.3d 365, 2007-Ohio-3328, at ¶ 26. R.C. Chapter 119 provides for an appeal of the administrative proceedings to the common pleas court. Id.
 {¶ 17} In Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, the Ohio Supreme Court set forth the applicable standards of review for a trial court and an appellate court from an order of the medical board, holding:
 In an appeal from a medical board's order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. R.C. 119.12; In re Williams (1991), 60 Ohio St.3d 85, 86, 573 N.E.2d 638, 639. The appellate court's review is even more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Instead, the appellate court must affirm the trial court's judgment. Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264, 266. See, also, Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241.
 Moreover, when reviewing a medical board's order, courts must accord due deference to the board's interpretation of the *Page 7 
technical and ethical requirements of its profession. The policy reason for this was noted in Arlen v. State (1980), 61 Ohio St.2d 168, 173, * * *: "`* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * * '" (Quoting Farrand v. State Med. Bd. [1949], 151 Ohio St. 222, 224, 39 O.O. 41, 42, 85 N.E.2d 113, 114.)
 {¶ 18} In the instant case, appellant's license was suspended based upon a finding he was in violation of R.C. 4731.22(B)(26). Pursuant to R.C. 4731.22(B)(26), the medical board may take disciplinary action against a physician, including revocation or suspension of an individual's certificate to practice, for "[i]mpairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice." Under Ohio Adm. Code4731-16-01 (A), "[i]mpairment includes inability to practice in accordance with such standards, and inability to practice in accordance with such standards without appropriate treatment, monitoring or supervision."
 {¶ 19} Under his first assignment of error, appellant argues that the medical board's disciplinary action, based primarily upon alcohol-related driving charges that did not directly implicate patient care, was not authorized by statute. Appellant argues there is no evidence he failed to practice medicine according to acceptable and prevailing standards of care and that, in the absence of evidence as to adverse impact on his patient practice as a result of alcohol abuse, the medical board exceeded its authority in attempting to impose sanctions or limitations. *Page 8 
 {¶ 20} Both the trial court and the medical board found unpersuasive appellant's contention that patient harm is required before the medical board is authorized to take disciplinary action. We also reject appellant's contention that the medical board is precluded from taking disciplinary action unless it has been presented with evidence that actual patient harm has already occurred.
 {¶ 21} Arguments similar to that raised by appellant in the instant case have been rejected by courts in other jurisdictions. InGriffiths v. Superior Court (2002), 96 Cal.App.4th 757, a physician claimed that the conduct at issue in that case, three drunk driving offenses, could not result in disciplinary action because there was no evidence he ever treated patients while under the influence or that he caused harm to any of his patients. The statute under which the physician was disciplined provided, in part, for action against a physician's license where the use of drugs or alcoholic beverages "impairs the ability of the licensee to practice medicine safely." Id., at 768.
 {¶ 22} In Griffiths, supra, at 771, the court found unpersuasive the physician's assertion that the disciplinary action imposed was invalid, holding in relevant part:
 * * * Griffiths contends that private conduct having no effect on a physician's treatment of patients cannot be a basis for imposing discipline on a medical license. In relation to multiple convictions involving driving and alcohol consumption, we reject the argument that a physician can seal off or compartmentalize personal conduct so it does not affect the physician's professional practice. * * *
 For a nexus to exist between the misconduct and the fitness or competence to practice medicine, it is not necessary for the misconduct forming the basis for discipline to have occurred in the actual practice of medicine. "[The Medical Board] is authorized to discipline physicians who have been convicted of criminal offenses not related to the quality of health care." *Page 9 (Bryce v. Board of Medical Quality Assurance
[1986], 184 Cal.App.3d 1471, 1476 * * *.)
 Substantial legal authority provides that conduct occurring outside the practice of medicine may form the basis for imposing discipline on a license because such conduct reflects on a licensee's fitness and qualifications to practice medicine. * * *
 {¶ 23} In response to the physician's specific argument that he could not be disciplined because there was no evidence that his drinking and driving convictions resulted in any harm to patients, the court inGriffiths, supra, at 772, held:
 * * * If accepted, this argument would have a serious implication for license discipline proceedings. In essence, it would prohibit the imposition of discipline on a licensee until harm to patients had already occurred. We reject this argument because it overlooks the preventative functions of license discipline, whose main purpose is protection of the public * * * but whose purposes also include prevention of future harm * * * and the improvement and rehabilitation of the physician * * * To prohibit license discipline until the physician-licensee harms a patient disregards these purposes; it is far more desirable to discipline before a licensee harms any patient than after harm has occurred.
(Emphasis sic; citations omitted.)
 {¶ 24} In Major v. Dept. of Professional Regulation, Bd. ofMedicine (1988), 531 So.2d 411, a Florida physician similarly contended that her public intoxication, arrest, and admitted drug use did not warrant discipline where the facts failed to show any patient harm arising out of the conduct. The state medical board rejected the view that patient injury was dispositive, and the court in Major agreed, holding that the conduct at issue reflected on the physician's competency as a physician, and that the board was not required to find the physician's public intoxication incident as merely "an isolated incident * * * which the Board was required to view as professionally irrelevant." Id., at 413. In *Page 10 
light of the physician's past history of alcohol abuse, the court noted that an impaired physician who is "capable of `falling off the wagon' in such an explosive way in her personal life may very well do so in her professional life as well — even if she has not as yet done so," and the court recognized that the medical board "need not wait for a physician like Dr. Major to engage in such acts of gross malpractice before it acts, as here, to protect the public interest." Id.
 {¶ 25} We find persuasive the above authorities, and conclude, in the instant case, that it was within the province of the medical board to consider the issue of impairment even in the absence of evidence of a specific incident of patient harm. Thus, the trial court did not abuse its discretion in rejecting appellant's contention on that issue, and appellant's first assignment of error is overruled.
 {¶ 26} Appellant's second and fifth assignments of error are interrelated and will be considered together. Under his second assignment of error, appellant argues that the trial court erred in finding that the decision of the medical board is supported by reliable, probative, and substantial evidence. Under his fifth assignment of error, appellant argues the trial court erred in its assumption that the medical board possesses special expertise beyond that of the trial court.
 {¶ 27} In arguing the medical board's order was not supported by reliable, probative, and substantial evidence, appellant first contends that there is a relevant distinction between alcohol dependence and alcohol abuse. Appellant argues that the medical board's order was flawed because the criteria for alcohol dependence, as set forth under the American Psychiatric Association's Diagnostic and Statistical Manual, Fourth Edition (hereafter "DSM-IV"), was not met in this case. On this point, appellant *Page 11 
challenges the diagnosis of Dr. Jones, arguing that her diagnosis should have been alcohol abuse rather than alcohol dependence. Appellant also argues that a "high level of general incompetence was demonstrated byDr. Jones throughout the entirety of this case." (Emphasis sic; Appellant's brief, at 11.)
 {¶ 28} Because much of appellant's focus, under these assignments of error, involves the testimony of Dr. Jones, we begin by reviewing her testimony and assessment/diagnosis of appellant. As noted under the facts, in August of 2005, appellant was admitted to Parkside, a drug and alcohol rehabilitation center, for a 72-hour evaluation. Following appellant's release, Dr. Jones, the medical director at Parkside, prepared a written assessment.
 {¶ 29} In the report, dated October 8, 2005, Dr. Jones observed that "alcohol is very important to [appellant] who continues drinking despite all of the above [OMVI incidents]." (State's Exhibit No. 2.) According to Dr. Jones, appellant "rationalizes how all of these things have happened to him," while at the same time he "minimizes the role alcohol has played in them." Id. Dr. Jones further noted that, when she discussed with appellant the potential of monitoring for a one-year period of time, "his first response was that he wouldn't drink for that time but implied he could resume drinking again when it was over." Id. Dr. Jones believed appellant to be "in denial of his alcoholism and warrants treatment and monitoring." Further, Dr. Jones opined that appellant "meets the diagnostic criteria for alcoholism by tolerance, repeated unpredictable loss of control, and repeated use despite consequences," and that he "meets criteria for statutory impairment based on my understanding of The State Medical Board rules and The Ohio Revised Code." Id. *Page 12 
 {¶ 30} Dr. Jones also gave the following testimony before the medical board hearing examiner regarding her diagnosis of alcohol dependency. In forming her diagnosis, Dr. Jones, who is certified in addiction medicine, interviewed appellant on two occasions, and reviewed appellant's records from Talbot Hall, as well as other psychological tests. Dr. Jones was on vacation at the time of appellant's admission to Parkside, and she met with him shortly after his release. At the time of release, appellant was given a tentative discharge diagnosis of "alcohol abuse" by Dr. John A. Johnson. (Tr. Vol. II, at 325.) The final diagnosis, however, was to be made after Dr. Jones met with appellant.
 {¶ 31} In considering appellant's history, Dr. Jones noted the DUI charges in 1992, and in 1993, followed by an OMVI charge in 2002. She cited the fact that, after his stay at Talbot Hall, where he was diagnosed with alcohol abuse, appellant did not make significant changes despite being instructed to go to meetings, and she noted that he did not fulfill the requirements of the Talbot Hall out-patient program. Dr. Jones expressed concern that, despite treatment in 2002, appellant did not change his behavior; rather, referencing the 2004 incident, he again drove after consuming alcohol, and was charged with OMVI.
 {¶ 32} Dr. Jones cited the DSM-IV as setting forth the diagnostic criteria, and she found that appellant met at least three of the diagnostic criteria for alcohol dependence. Specifically, the criteria she cited as relevant in this case were: (1) increased tolerance for alcohol; (2) unpredictable loss of control; and (3) repeated use despite consequences.
 {¶ 33} Dr. Jones defined "tolerance" as "an increased capacity to drink higher amounts than in the past with the same effect or the need to use higher amounts over *Page 13 
time to achieve the same effect." (Tr. Vol. II, at 359.) Dr. Jones found evidence of tolerance in appellant's record, including the fact that appellant informed her "he was drinking more than he had in the past," and that, in times of increasing stress, he consumed more alcohol than in the past. (Tr. Vol. II, at 364.)
 {¶ 34} Dr. Jones testified that unpredictable loss of control is present when an individual drinks more alcohol than they intend to drink on more than one occasion. She cited appellant's multiple OMVI charges as instances in which alcohol was consumed in larger amounts than intended.
 {¶ 35} Regarding the criteria of repeated use despite consequences, Dr. Jones testified appellant told her that he sought treatment in 2002 "strictly to get people off his back; thought it would look good in court at that time, should something further come out of that." (Tr. Vol. II, at 366.) Dr. Jones believed that appellant did not take the treatment seriously, and that he would pacify individuals and then "do what he pleases." (Tr. Vol. IV, at 578.) Dr. Jones testified that appellant's subsequent conduct, including resuming consumption of alcohol and the OMVI and child endangerment citations in Indiana, indicates that alcohol is extremely important to appellant, and that he continues to drink despite numerous legal problems.
 {¶ 36} Dr. Jones found appellant to be in "high-level denial" regarding his use of dependency on alcohol. (Tr. Vol. IV, at 579.) She cited alarm at appellant's response, during one of their interviews, to a suggested one-year monitoring period, in which appellant stated: "Oh, I can not drink for a year." (Tr. Vol. IV, at 578.) The manner in which appellant responded indicated to Dr. Jones that appellant "still doesn't see there's a problem and that he won't drink for a year, but then he's planning on drinking again." (Tr. *Page 14 
Vol. IV, at 578.) Citing a repeated pattern of serious issues, Dr. Jones testified that appellant "still doesn't see alcohol as a problem and that he intends to go back to drinking again * * * which I found * * * very, very alarming." (Tr. Vol. IV, at 578.)
 {¶ 37} Dr. Jones opined that appellant meets the criteria of "alcohol dependency," and that he also meets the criteria for statutory impairment based upon the Ohio Revised Code and the medical board's rules. (Tr. Vol. II, at 376.) Dr. Jones reviewed the medical board's rules and state statutes in arriving at her assessment of impairment. Dr. Jones described impairment as a situation in which, "after assessment the person is found to either need ongoing monitoring to assure abstinence so that people are protected or if they need treatment, that that person is considered impaired and unable to practice according to acceptable and prevailing standards of care." (Tr. Vol. II, at 369.) She noted that a physician with a diagnosis of alcohol dependency, if untreated, presents a significant risk of patient harm. Based upon her diagnosis of appellant, Dr. Jones opined that he posed a risk of patient harm.
 {¶ 38} As noted, appellant challenges evidence that he met the criteria for alcohol dependency under the DSM-IV. During the medical board hearing, counsel for appellant questioned Dr. Jones regarding the fact the DSM-IV contained no specific listing for "unpredictable loss of control." Dr. Jones, however, explained that the term was her "phrasing of the criteria." (Tr. Vol. II, at 385.) Dr. Jones stated that, in preparing her assessment reports, she does not necessarily use "word for word" the criteria set forth in the DSM-IV. (Tr. Vol. II, at 390.)
 {¶ 39} Upon review of the challenged testimony, the fact that Dr. Jones may have used somewhat different terminology than that listed under the DSM-IV does not, in our *Page 15 
view, undermine her assessment. One of the "listed" criteria for substance dependence is taking the substance "in larger amounts or over a longer period than was intended." (Respondent's Exhibit I.) As noted previously, Dr. Jones testified that unpredictable loss of control is present when an individual drinks more alcohol than they intend to drink on more than one occasion. Thus, while she may have used differing phraseology, Dr. Jones adequately identified the criteria.
 {¶ 40} In arguing that Dr. Jones showed a general level of incompetence throughout the case, appellant cites Dr. Jones' use of the term "alcoholism" in her assessment report. Appellant contends that the use of alcoholism interchangeably with the term "alcohol dependency" demonstrates poor form and is reflective of substandard practice.
 {¶ 41} During the hearing, Dr. Jones was asked by counsel for appellant whether there is an "alcoholism" category in the DSM-IV. Dr. Jones agreed with counsel that there is no alcoholism category, and made clear that the diagnosis is "alcohol dependency." When asked about the reference in her assessment report to "alcoholism," Dr. Jones stated that she employed "that term interchangeably with alcohol dependency." (Tr. Vol. II, at 375.) According to Dr. Jones, such use of the terms is "accepted in the field." (Tr. Vol. IV, at 593.) In this regard, Dr. Jones noted that a passage from an article by the National Institute for Alcohol Abuse and Alcoholism, provided to her by counsel for appellant, used the terms alcoholism and alcohol dependency as "meaning the same thing." (Tr. Vol. IV, at 593.) Dr. Jones clarified, however, based upon her assessment, that appellant "meets the criteria of alcohol dependency." (Tr. Vol. II, at 376.) Thus, while Dr. Jones sometimes used the terms interchangeably, it is clear from her testimony that *Page 16 
she recognized alcoholism is not a criteria category and that, in context, her opinion was that appellant met the criteria for alcohol dependency.
 {¶ 42} The record in this case reflects that the hearing examiner and the medical board found Dr. Jones to be a credible witness. During the February 8, 2006 proceedings, in which the medical board considered appellant's objections to the hearing examiner's report, medical board members expressed their view that the evidence supported a finding of impairment. One of the physician board members stated "there are so many red flags in this case that it's clear to Board members that this gentleman is impaired." (Medical Board Minutes, Feb. 8, 2006.) Another physician board member found the definition of an impaired individual (i.e., who drinks despite adverse consequences and who minimizes the role alcohol has played in events) "fits Dr. Ridgeway to a tee." Id.
 {¶ 43} Several of the medical board members, in considering appellant's efforts to minimize alcohol in his life, cited the 2004 incident in which appellant's four-year-old daughter was placed in protective custody for the weekend. During the hearing, when asked about the impact of being separated from his daughter for two days that weekend, appellant's response was that his daughter "actually had fun during those two days." (Tr. Vol. I, at 86.) Appellant further stated that his daughter "had a nice weekend with this lady named Rose and was not worried about it; so I would say the consequences were not overwhelming." (Tr. Vol. I, at 87.) One physician medical board member characterized appellant's response to the impact of this incident as "disturbing." Another physician medical board member found that appellant failed to understand the importance *Page 17 
of alcohol disease, citing hearing evidence in which appellant indicated he could maintain sobriety for a period of time, if requested, but that he would resume drinking afterwards.
 {¶ 44} The trial court, in reviewing the evidence presented, found appellant's minimization of events to be "in consonance with Dr. Jones['] opinion that Appellant was in denial." (Trial Court Decision, at 11.) The trial court, noting that the majority of the medical board members are physicians, agreed with the medical board's conclusion that there was sufficient evidence to support a finding that appellant was impaired and posed a danger to the public. Upon review, we find that the trial court did not abuse its discretion in finding that the order of the board was supported by reliable, probative, and substantial evidence, and was in accordance with law.
 {¶ 45} Appellant contends that the trial court erred in its assumption that the medical board possesses "special expertise" beyond that of the court. Appellant maintains that, while the medical board may have expertise among its members in evaluating medical evidence, it does not have a member physician certified in the field of addiction medicine, thus undermining the medical board's ability to address issues of alcohol abuse and physician impairment.
 {¶ 46} We find appellant's arguments to be unpersuasive. Under Ohio law, "[a] medical disciplinary proceeding is a special statutory proceeding conducted by twelve persons, eight of whom are licensed physicians." Pons, supra, at 623, citing R.C. 4731.01. This court has previously noted that "[t]he legislature and the courts of Ohio have delegated comprehensive decision-making power to the [State Medical] Board," and that "[s]uch power includes, but is not limited to, the authority to rely on the Board's own knowledge when making a decision."Walker, M.D. v. State Med. Bd. of Ohio (Feb. 21, *Page 18 
2002), Franklin App. No. 01AP-791. Further, "[i]t is well-established that `* * * the board may rely on its own expertise to determine whether a physician failed to conform to minimum standards of care.'" Id., quoting Arlen v. State (1980), 61 Ohio St.2d 168, 172. In this respect, "[e]xpert testimony as to a standard of practice is not even mandatory in a license revocation hearing" because the specialized knowledge of licensed physicians on the board "renders the Board capable of both interpreting the technical requirements of the medical profession and determining whether a physician's conduct falls below the minimal standard of care." Walker, supra. However, "[w]hile the board need not, in every case, present expert testimony to support a charge against an accused physician, the charge must be supported by some reliable, probative and substantial evidence." In re Williams (1991),60 Ohio St.3d 85, 87. Because "a majority of the board members possess the specialized knowledge needed to determine the acceptable standard of general medical practice * * * the medical board is quite capable of interpreting technical requirements of the medical field and quite capable of determining when conduct falls below the minimum standard of care." Pons, supra, at 623.
 {¶ 47} In the instant case, the trial court's recognition, in its decision, that the medical board has special expertise and knowledge is consistent with the Ohio Supreme Court's admonition that "courts must accord due deference to the [medical] board's interpretation of the technical and ethical requirements of its profession." Id., at 621.
 {¶ 48} Based upon the foregoing, appellant's second and fifth assignments of error are without merit and are overruled.
 {¶ 49} Appellant's third and sixth assignments of error are somewhat interrelated and will be considered together. Under the third assignment of error, appellant asserts *Page 19 
that his constitutional right to the "presumption of innocence" was denied based upon the fact the conduct at issue involved a "pending charge" and only one actual conviction.
 {¶ 50} We find no merit to this argument. The issue of whether appellant suffered an impairment of his ability to practice medicine because of excessive use of alcohol was not dependent upon the existence of a criminal conviction, nor was the medical board required to wait, pending the resolution of appellant's DUI charge in Indiana, to consider this incident in relation to the issue of impairment. Similar to appellant's argument that the medical board was precluded from taking any disciplinary action absent evidence of patient harm, the implication that the medical board could not consider or investigate the circumstances surrounding a "pending" charge would essentially impede its ability to protect the public from potential harm. Further, appellant had the opportunity to testify at the hearing regarding the facts giving rise to the Indiana charge.
 {¶ 51} Under his sixth assignment of error, appellant argues that the trial court erred in failing to find that the summary suspension was prejudicial with regard to the administrative hearing, and as to the subsequent medical board determination. Appellant concedes that the trial court "appears to have been able to distinguish the issue of summary suspension from that of the subsequent final Board order[.]" (Appellant's brief, at 17.) He maintains, however, that the issue of the summary suspension "was not only known to the court but clearly remains in the minds of all those involved in this case," and appellant further contends that the trial court failed to consider "the degree to which this was likely to be prejudicial to the plaintiff throughout the administrative hearing process[.]" (Appellant's brief, at 18.) Appellant's argument is without merit. *Page 20 
 {¶ 52} R.C. 4731.22(G) provides in part:
 If the secretary and supervising member determine that there is clear and convincing evidence that an individual has violated division (B) of this section and that the individual's continued practice presents a danger of immediate and serious harm to the public, they may recommend that the board suspend the individual's certificate to practice without a prior hearing. * * *
 The board, upon review of those allegations and by an affirmative vote of not fewer than six of its members * * * may suspend a certificate without a prior hearing. A telephone conference call may be utilized for reviewing the allegations and taking the vote on the summary suspension.
 The board shall issue a written order of suspension by certified mail or in person in accordance with section 119.07 of the Revised Code. * * * If the individual subject to the summary suspension requests an adjudicatory hearing by the board, the date set for the hearing shall be within fifteen days * * * after the individual requests the hearing, unless otherwise agreed to by both the board and the individual.
 Any summary suspension imposed under this division shall remain in effect, unless reversed on appeal, until a final adjudicative order issued by the board pursuant to this section and Chapter 119. of the Revised Code becomes effective. The board shall issue its final adjudicative order within seventy-five days after completion of its hearing. * * *
 {¶ 53} Here, appellant does not contend that the requirements of R.C.4731.22(G) were ignored, nor does he cite to any specific instances of alleged prejudice from the record. Rather, appellant asserts he has knowledge of "statements made by this particular hearing officer several months after the hearing" regarding Dr. Jones which "calls into question the validity of the Report and Recommendation itself." (Appellant's brief, at 18.) Appellant's reference to purported matters outside the record is insufficient to support a showing of prejudice. The trial court considered appellant's challenge to the *Page 21 
summary suspension and found no prejudice under the circumstances. Upon review, we find no abuse of discretion by the trial court's determination.
 {¶ 54} Based upon the foregoing, appellant's third and sixth assignments of error are without merit and are overruled.
 {¶ 55} Under his fourth assignment of error, appellant contends the trial court abused its discretion in denying his motion to introduce critical additional evidence. Specifically, appellant argues that the court should have considered evidence of his treatment by Dr. Gregory Collins of the Cleveland Clinic Foundation, Alcohol and Drug Recovery Center (hereafter "Cleveland Clinic"). Appellant acknowledges that the evidence as to this assessment was known to exist, but appellant maintains that reasonable diligence was exercised in attempting to get these records before the administrative proceedings. Appellant thus seeks a remand hearing to address this issue.
 {¶ 56} By way of background, on the fifth and final day of the administrative hearing, appellant testified that he had spent 28 days at the Cleveland Clinic. Appellant's counsel then sought to introduce a copy of a document pertaining to that treatment, i.e., a treatment and recovery contract from the Cleveland Clinic. The state objected on the basis that the information at issue had never been submitted prior to the hearing. The hearing examiner found that the information was relevant to the proceedings, and indicated that the state would be allowed additional time, if needed, to respond to the proposed exhibit.
 {¶ 57} In the hearing examiner's report and recommendation, this issue was addressed, in which the hearing examiner noted in part: "The hearing record * * * was *Page 22 
held open to allow the State to determine whether it would be appropriate to present rebuttal evidence in response to particular testimony elicited during the fifth day of [the] hearing." (Hearing Examiner Report, at ¶ 5.) The hearing examiner further noted, however, that during "post-hearing discussions * * * the parties agreed to strike that testimony in order to forgo additional days of hearing." Id. Thus, that testimony was stricken from the transcripts, unredacted copies of hearing transcripts were sealed, and the exhibit at issue ("Respondent's Exhibit P") was also sealed.
 {¶ 58} Following his appeal to the trial court from the medical board's order, appellant sought to introduce the treatment records from the Cleveland Clinic. The board filed a memorandum contra appellant's motion to introduce additional evidence.
 {¶ 59} By decision filed August 31, 2006, the trial court denied appellant's motion to admit additional evidence. Specifically, the trial court determined that appellant failed to show that the records were "newly discovered," or that appellant had exercised "reasonable diligence" in seeking to ascertain the existence of these records for the administrative hearing.
 {¶ 60} R.C. 119.12 provides in pertinent part:
 Unless otherwise provided by law, in the hearing of the appeal, the court is confined to the record as certified to it by the agency. Unless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that the additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency.
 {¶ 61} Upon review, we find the trial court did not abuse its discretion in denying appellant's motion to supplement the record. The evidence sought to be introduced was, by appellant's own admission, not newly discovered. Further, as noted by the trial court, *Page 23 
appellant failed to indicate what specific measures he had taken to show "reasonable diligence" in attempting to obtain this information. In his motion to supplement the record, appellant's supporting memorandum generally asserted that the board was "put on notice of Dr. Ridgeway's attendance at the Cleveland Clinic during the Administrative Hearing." The record indicates, however, that the issue of appellant's attendance at the Cleveland Clinic was not raised during the proceedings until the final day of testimony. Further, despite the hearing examiner's willingness to allow the state time to review the materials, counsel for appellant waived the presentation of this evidence in order to allow the matter to proceed in a timely manner. Under these circumstances, we find no error by the trial court's denial of appellant's motion.
 {¶ 62} Accordingly, appellant's fourth assignment of error is without merit and is overruled.
 {¶ 63} Based upon the foregoing, appellant's first, second, third, fourth, fifth, and sixth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 BRYANT and FRENCH, JJ., concur. *Page 1