[Cite as *Flynn v. State Med. Bd. of Ohio*, 2016-Ohio-5903.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Freeda J. Flynn, M.D., | : | |
| Appellant-Appellant, | : | |
| | | No. 16AP-29 |
| v. | : | (C.P.C. No. 15CV-4888) |
| State Medical Board of Ohio, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on September 20, 2016

**On brief:** *Dinsmore & Shohl, LLP, Eric J. Plinke, Daniel S. Zinsmaster*, and *Brendan T. O'Reilly*, for appellant. **Argued:** *Brendan T. O'Reilly*.

**On brief:** *Michael DeWine*, Attorney General, and *Emily A. Pelphrey*, for appellee. **Argued:** *Emily A. Pelphrey*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Appellant-appellant, Freeda J. Flynn, M.D., appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee-appellee, State Medical Board of Ohio ("Board"), placing appellant's license to practice medicine and surgery in Ohio on probation for three years. For the reasons which follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant has been licensed to practice medicine and surgery in Ohio since 1994; she is board certified in family medicine. On March 5, 2014, the Board informed appellant it had reason to believe that she was in violation of R.C. 4731.22(B)(19), in that she was impaired due to mental illness. The March 5, 2014 letter cited the following five

events in support of the Board's conclusion that appellant might be in violation of R.C. 4731.22(B)(19): (1) that appellant was fired on January 29, 2010 from the family practice she was employed at, Mercer Health, because on at least two instances her "improper charting could have resulted in harm to the patient had [her] orders been followed," and because of "inappropriate and disruptive behavior in the office," including that she had "screamed at staff" and "screamed at patients"; (2) in 2012, at her current practice, there was an incident where she "yelled at [a] patient, threw items, and told him to get out"; (3) during her 1994 application for licensure, she reported to the Board that in 1991 she was diagnosed with Depressive Disorder NOS and was prescribed Prozac; (4) in 2002, she informed the Board that her hospital privileges at a hospital in West Virginia had been summarily suspended, although they were later restored; and (5) in 2013, she reported to the Board that she was not taking any medication for conditions related to mental illness. (State's Ex. 2, Mar. 5, 2014 Letter at 1-2.)  The Board ordered appellant to submit to a psychiatric examination by Stephen Noffsinger, M.D.

{¶ 3}  Dr. Noffsinger examined appellant on March 27, 2014, and wrote a report regarding his findings on March 30, 2014.  Dr. Noffsinger concluded, "with reasonable medical certainty that [appellant] has the mental disorder of Persistent Depressive Disorder * * *, which is characterized by [appellant's] symptoms of chronic mild depression, mild fatigue, anxiety, difficulty tolerating stress and mildly impaired concentration."  (State's Ex. 3, Dr. Noffsinger's Report at 11.)  Dr. Noffsinger concluded that her disorder "result[ed] in her being unable to practice medicine according to acceptable and prevailing standards of care," explaining that "[d]ue to her depressive symptoms, [her] ability to tolerate stress is seriously compromised."  (State's Ex. 3 at 11.)  Dr. Noffsinger also concluded that appellant's disorder was amenable to treatment.

{¶ 4}  On September 10, 2014, the Board issued a notice of opportunity letter advising appellant that the Board intended to determine whether to limit, revoke, permanently revoke, suspend, reprimand, or place her license on probation for being in violation of R.C. 4731.22(B)(19).  The letter advised appellant that she was entitled to a hearing on the matter, and appellant requested a hearing.  The Board initially set the hearing for February 9, 2015, but continued the hearing, at appellant's request, to March 17, 2015.

{¶ 5} Dr. Noffsinger was the only witness to testify at the March 17, 2015 hearing. Dr. Noffsinger noted that appellant's odd behaviors, such as yelling at patients and staff, were consistent with his diagnosis of persistent depressive disorder. Dr. Noffsinger explained that appellant's persistent depressive disorder renders her unable to tolerate stress and that accordingly when stressed, "she becomes irritable, she becomes disruptive, she has impaired concentration, and she makes errors." (Tr. at 36.) Dr. Noffsinger testified that due to her persistent depressive disorder, appellant is unable to practice medicine according to acceptable and prevailing standards of care.

{¶ 6} On April 2, 2015, the hearing examiner issued a "Report and Recommendation," concluding that appellant was unable to practice according to acceptable and prevailing standards of care due to her mental illness. As such, the hearing examiner found appellant to be in violation of R.C. 4731.22(B)(19) and recommended that the Board suspend appellant's license for an indefinite period of time. Appellant filed written objections to the Report and Recommendation on April 24, 2015.

{¶ 7} The Board considered appellant's objections at its May 13, 2015 meeting. The Board adopted the hearing examiner's findings of fact and conclusions of law but amended the proposed order from indefinite suspension to a three-year term of probation. The terms of appellant's probation include that she submit to Board-approved and Board-monitored psychiatric treatment and that she attend and complete courses dealing with disruptive physicians, professional ethics, and office management.

{¶ 8} Appellant appealed the Board's order to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The court of common pleas found reliable, probative, and substantial evidence to support the Board's order and concluded that the order was in accordance with law. The court overruled appellant's assigned errors concerning alleged violations of Title II of the American with Disabilities Act ("ADA") and R.C. 4112.02(A), and alleged due process violations. As such, the lower court affirmed the Board's order.

## II. ASSIGNMENTS OF ERROR

{¶ 9} Appellant appeals, assigning the following errors for our review:

[1.] The Court of Common Pleas Erred in Affirming the Board's Order Because the Order Violates State and Federal

Laws Prohibiting Discrimination Against Individuals with Disabilities, and Therefore the Order is not in Accordance with Law.

[2.] The Court of Common Pleas Erred by Finding the Board's Order is Supported by a Preponderance of Substantial, Probative, and Reliable Evidence Because the Board Failed to Prove Any of the Three Critical Elements of the Alleged Violation.

[3.] The Court of Common Pleas Erred in Affirming The Board's Order Because the Legal Standard Underlying the Board's Action Fails to Accurately Find a Violation of the Statute Alleged, and Therefore the Order is not in Accordance with Law.

[4.] The Court of Common Pleas Erred in Affording the Board's Evaluation of Evidence Deference when No Deference was Due.

[5.] The Court of Common Pleas Erred in Affirming The Board's Order Because the Hearing Provided to Dr. Flynn was Unfair, in Violation of State and Federal Protections of Dr. Flynn's Rights to Due Process of Law, and Therefore The Order is not in Accordance with Law.

## III.  STANDARD OF REVIEW

{¶ 10} Under R.C. 119.12, a common pleas court, in reviewing an order of an administrative agency, must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and the order is in accordance with law.  *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). The Supreme Court of Ohio has defined the concepts of reliable, probative, and substantial evidence as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted.  In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.,* 63 Ohio St.3d 570, 571 (1992).

{¶ 11} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is "in accordance with law." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 12} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.* Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court. *Id.* An appellate court, however, has plenary review of purely legal questions. *Big Bob's, Inc. v. Ohio Liquor Control Comm.,* 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

**A. First Assignment of Error – Discrimination**

{¶ 13} Appellant's first assignment of error asserts that the Board's order violates state and federal laws prohibiting discrimination against individuals with disabilities.

{¶ 14} The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132. A person is a "qualified individual with a disability" if they are "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, * * * meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. 12131. In Ohio, it is unlawful for the state to discriminate against any person in any matter related to employment on the basis of a person's disability. *See* R.C. 4112.02, 4112.01. For the reasons stated below, we find that appellant is not a qualified individual

with a disability and that the Board did not unlawfully discriminate against her on the basis of a disability.

{¶ 15} The Supreme Court has held that the "Americans with Disabilities Act * * * does not prevent the discipline of attorneys with disabilities." *Columbus Bar Assn. v. Elsass*, 86 Ohio St.3d 195, 199 (1999). "This is because the primary purpose of attorney discipline is to protect the public," and the Supreme Court accordingly has a "constitutional duty to oversee the bar and to ensure that its members are fit to practice law." *Id.* at 199. *See also Cincinnati Bar Assn. v. Komarek*, 84 Ohio St.3d 90, 96 (1998) (noting that the "ADA does not prevent disciplinary authorities from disbarring an attorney with a bipolar disorder who had misappropriated client funds").

{¶ 16} Just as the Supreme Court oversees the bar to ensure that its members are fit to practice law, the Board oversees physicians to ensure that they are fit to practice medicine and surgery in Ohio. *See Bouquett v. State Med. Bd.*, 123 Ohio App.3d 466, 473 (10th Dist.1997) (noting that "R.C. 4731.22(B) was enacted under the state's police powers," and accordingly the provisions in R.C. 4731.22(B) relate "directly to the state's interest in protecting the public from a physician whose behavior has fallen below an acceptable standard of conduct"). The "very nature of the police powers exercised by state boards of medicine require the state to discriminate on the basis of, among other considerations, a mental condition harmful to the public's safety." *Alexander v. Margolis*, 921 F.Supp. 482, 488 (W.D.Mich.1995). Indeed, "[t]he danger of irreparable harm to the public is too great to deny the Board such discretion." *Id.*

{¶ 17} The Board concluded, relying on Dr. Noffsinger's findings, that appellant is unable to practice medicine according to acceptable and prevailing standards of care as a result of her mental illness. Accordingly, appellant does not meet the essential eligibility requirements for practicing medicine in Ohio and is not a qualified individual with a disability under the ADA. *See Hanson v. Medical Bd. of Cal.*, C.D.Cal. No. CV 99-04264-AHM (Feb. 1, 2000) (noting that "a medical license applicant who suffers from a mental disability is not a 'qualified individual with a disability' under the ADA").

{¶ 18} Appellant asserts that there is no evidence that her "disability poses * * * danger to the public" and contends that because she "poses no threat of public harm, the state's police power is no longer implicated." (Appellant's Brief at 15, 16.) However,

appellant was terminated from Mercer Health in part because, on at least two occasions, her "improper charting could have resulted in harm to the patient had [her] orders been followed." (State's Ex. 2 at 1.) Dr. Noffsinger explained that, due to her persistent depressive disorder, "[w]hen stresse[d], [appellant's] concentration is impaired, causing her to make errors and have difficulty multi-tasking." (State's Ex. 3 at 11.) Indeed, appellant informed Dr. Noffsinger that she has "difficulty multitasking," which Dr. Noffsinger noted "is required of people who practice medicine, to be able to handle multiple things at once." (Tr. at 36.)

{¶ 19} A physician with impaired concentration and difficulty multi-tasking, who has a history of giving incorrect orders, is a danger to the public. Moreover, it is "within the province of the medical board to consider the issue of impairment even in the absence of evidence of a specific incident of patient harm." *Ridgeway v. State Med. Bd.*, 10th Dist. No. 07AP-446, 2008-Ohio-1373, ¶ 25. *See also Griffiths v. Superior Court*, 96 Cal.App.4th 757, 772 (2002) (noting the "preventative functions of license discipline, whose main purpose is protection of the public * * * but whose purposes also include prevention of future harm * * * and the improvement and rehabilitation of the physician").

{¶ 20} Because appellant's mental illness renders her unable to practice medicine and surgery according to acceptable and prevailing standards of care, the Board's order taking action against her license under R.C. 4731.22(B) did not violate the ADA or R.C. 4112.02. Based on the foregoing, appellant's first assignment of error is overruled.

## B. Second Assignment of Error − Reliable, Probative, and Substantial Evidence

{¶ 21} Appellant's second assignment of error asserts that the trial court erred in finding that the Board's order was supported by a preponderance of reliable, probative, and substantial evidence. Appellant asserts that the Board failed to prove any of the elements critical to a violation of R.C. 4731.22(B)(19).

{¶ 22} R.C. 4731.22(B)(19) provides that the Board may take action against a doctor's license due to an "[i]nability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills."

"R.C. 4731.22(B)(19) is not triggered by mere evidence of a mental illness; rather, the board's authority to charge and discipline a practitioner under (B)(19) is dependent upon the board's finding of an individual's 'inability to practice according to acceptable and prevailing standards of care' by reason of a mental illness." *Landefeld v. State Med. Bd.*, 10th Dist. No 99AP-612 (June 15, 2000).

{¶ 23} Appellant asserts that the five items of evidence cited by the Board in the March 5, 2014 letter are unreliable and fail to demonstrate a current inability to practice. Initially, we note that the Board does not need evidence of a current inability to practice in order to find a R.C. 4731.22(B)(19) violation. Ohio Adm.Code 4731-28-01(B) defines "[i]nability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness" to include an "inability to practice in accordance with such standards without appropriate treatment, monitoring, or supervision." In *Taylor v. State Med. Bd.*, 10th Dist. No. 10AP-262, 2010-Ohio-5560, the Board found Dr. Taylor to be in violation of R.C. 4731.22(B)(19), despite the fact that her bipolar disorder had been in full remission for four years before the Board took action against her license. Because Dr. Taylor had a history of mental illness, the Board physician who examined Dr. Taylor "opined that it was foreseeable that Dr. Taylor would experience future disabling episodes of her mental illness" and concluded that as long as she "continued in treatment including medication and counseling, and was monitored and supervised by the Board, Dr. Taylor was capable of practicing medicine according to acceptable and prevailing standards of care." *Id.* at ¶ 2. Accordingly, in *Taylor*, we upheld the Board's order placing restrictions on Dr. Taylor's license because the evidence supported the finding that Dr. Taylor was unable to practice without appropriate treatment, monitoring, or supervision.

{¶ 24} The five items of evidence noted in the Board's letter, in conjunction with Dr. Noffsinger's report and testimony, demonstrate that appellant has had an ongoing struggle with depression since the 1990s. Dr. Noffsinger explained that appellant has "had these problems for over 20 years and has not engaged in a pattern of sustained treatment, you know, left to her own." (Tr. at 40.) Thus, Dr. Noffsinger explained that, "especially given the concerns about public safety, that there needs to be sustained treatment that can be monitored by the Board." (Tr. at 40.) Accordingly, the record contains reliable, probative, and substantial evidence that appellant's persistent

depressive disorder renders her unable to practice according to acceptable and prevailing standards of care without appropriate treatment, monitoring, and supervision.

{¶ 25} Moreover, appellant's various arguments about the five items of evidence are immaterial, as the Board did not rely on those five incidents to find a violation of R.C. 4731.22(B)(19). Rather, the Board relied on those items of evidence to order appellant to submit to psychological examination by Dr. Noffsinger. Although Dr. Noffsinger reviewed some of these evidentiary items to write his report, he also relied on his personal examination of appellant to conclude that she suffers from persistent depressive disorder and is unable to practice as a result. The Board relied on Dr. Noffsinger's report and testimony to find a violation of R.C. 4731.22(B)(19).

{¶ 26} Appellant contends that her professional references contained in the Mercer Health records in State's Exhibit 5 "affirmatively disprove any evidence of an inability to practice in accordance with the standards of care." (Appellant's Brief at 30.) However, the physicians who provided these employment references did not examine appellant to ascertain whether she suffered from a mental illness and were not asked to determine whether, in light of her mental illness, she could practice according to acceptable and prevailing standards of care. Accordingly, the employment references do not affirmatively disprove Dr. Noffsinger's conclusion that appellant was unable to practice according to acceptable and prevailing standards of care.

{¶ 27} Appellant next asserts that the Board "failed to meet its evidentiary burden to show by a preponderance of substantial, probative, and reliable evidence that [appellant] suffers from a mental illness." (Appellant's Brief at 33.) Appellant asserts that Dr. Noffsinger's Diagnostic and Statistical Manual ("DSM") diagnosis of persistent depressive disorder is not supported by the facts in the record.

{¶ 28} The DSM-V provides the following requirements for a finding persistent depressive disorder: (1) the individual experiences a depressed mood for most of the day, for more days than not, as indicated by either subjective account or observation by others, for at least two years, and (2) the presence, while depressed, of low energy or fatigue, and poor concentration or difficulty making decisions. The DSM-V further requires that, during the two-year period of the disturbance, the individual has never been without the symptoms in (1) and (2) for more than two months at a time.

{¶ 29} Appellant claims that "the Board presented no evidence of events in the previous two years" and asserts that there is "little in the record to support" the requirement that she experienced a depressed mood for most days over the last two years. (Appellant's Brief at 35.) However, appellant reported to Dr. Noffsinger that she experiences "mild chronic depression, present all of the time, since her husband left the marital relationship a few years ago." (State's Ex. 3 at 8.) Appellant also reported to Dr. Noffsinger that she suffers from "[f]atigue (mild)" and that she has "mildly impaired concentration, as evidenced by some difficulty multi-tasking." (State's Ex. 3 at 9.) Accordingly, appellant's own statements to Dr. Noffsinger demonstrate that she reported feeling depressed, all of the time, over the past couple of years, in conjunction with fatigue and poor concentration. As such, the record supports Dr. Noffsinger's diagnosis of persistent depressive disorder.

{¶ 30} The common pleas court did not abuse its discretion in finding that the Board's order was supported by reliable, probative, and substantial evidence. Dr. Noffsinger personally examined appellant and concluded that she suffers from persistent depressive disorder which renders her unable to practice according to acceptable and prevailing standards of care as a result. Appellant did not present an expert or a fact witness to contradict Dr. Noffsinger's findings. Accordingly, the Board, as the trier of fact, was entitled to rely on Dr. Noffsinger's opinion, which amounted to reliable, probative, and substantial evidence that appellant was in violation of R.C. 4731.22(B)(19).

{¶ 31} Based on the foregoing, appellant's second assignment of error is overruled.

## C. Third Assignment of Error – Order not in Accordance with Law

{¶ 32} Appellant's third assignment of error asserts that the Board's order is not in accordance with law, as a result of the questions the Board asked Dr. Noffsinger. The Board sent Dr. Noffsinger a letter on March 22, 2014, asking him to evaluate appellant. The letter asked Dr. Noffsinger to provide his opinion on the following three issues:

> (1) Whether there is any evidence that [appellant] suffers from any mental disorder or other psychopathology;

> (2) If the answer to (1) is affirmative, whether [appellant] is presently capable of practicing medicine according to

acceptable and prevailing standards of care, and what restrictions or conditions, if any, should be placed upon her practice; and

(3) If the answer to (1) is affirmative, whether the disorder is amenable to treatment and the plan of treatment you would recommend based upon your assessment of [appellant's] current needs.

(State's Ex. 4, Mar. 22, 2014 Letter at 1.)

{¶ 33} Appellant asserts that the three questions are not the "correct inquiry," as they fail to specifically ask if appellant has a mental illness or if there is a causal connection between appellant's mental illness and her inability to practice according to acceptable and prevailing standards of care. (Appellant's Brief at 41.) Because Dr. Noffsinger used the questions to evaluate appellant, appellant asserts that an error of law occurred.

{¶ 34} However, the letter specifically informed Dr. Noffsinger that the "above-listed issues are in no way intended to limit your evaluation or report." (State's Ex. 4 at 1.) The letter also directed Dr. Noffsinger to evaluate whether appellant "suffer[ed] from an 'inability to practice according to acceptable and prevailing standards of care by reasons of mental illness or physical illness,' as that clause is used in Section 4731.22(B)(19), Ohio Revised Code." (State's Ex. 4 at 1.) Accordingly, Dr. Noffsinger's examination was not limited to simply answering those three questions, and the letter specifically directed Dr. Noffsinger to R.C. 4731.22(B)(19).

{¶ 35} Although appellant asserts that the Board failed to ask Dr. Noffsinger whether she suffered from a mental illness, Dr. Noffsinger diagnosed appellant as suffering from persistent depressive disorder, which is a mental illness. Similarly, while appellant asserts that the questions failed to ask about causation, Dr. Noffsinger found causation present, as he testified that appellant is unable to practice medicine according to acceptable and prevailing standards of care due to her persistent depressive disorder.

{¶ 36} Appellant's contentions about the phrasing of the Board's questions are meritless. Dr. Noffsinger evaluated appellant for purposes of R.C. 4731.22(B)(19) and opined that she was unable to practice medicine according to acceptable and prevailing

standards of care due to her mental illness. The Board appropriately relied on Dr. Noffsinger's findings. As such, the Board's order is in accordance with law.

{¶ 37} Appellant's third assignment of error is overruled.

### D. Fourth Assignment of Error – Deference

{¶ 38} Appellant's fourth assignment of error asserts that the trial court erred in affording the Board's evaluation of the evidence deference. Appellant asserts that, although it is "unclear" whether the "lower court actually afforded the Board deference," to the "extent that the lower court did afford the Board deference, it did so in error." (Appellant's Brief at 43.) The trial court noted that it had "to 'give due deference to the administrative resolution of evidentiary conflicts' " and concluded that the record contained reliable, probative, and substantial evidence supporting the Board's order. (Jan. 8, 2016 Decision & Entry at 8, quoting *Conrad* at 111.)

{¶ 39} "The legislature and the courts of Ohio have delegated comprehensive decision-making power to the [State Medical] Board," and "[s]uch power includes, but is not limited to, the authority to rely on the Board's own knowledge when making a decision." *Walker, M.D. v. State Med. Bd.*, 10th Dist. No. 01AP-791 (Feb. 21, 2002). Indeed, the " ' "purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field." ' " *Pons* at 621-22, quoting *Arlen v. State Med. Bd.*, 61 Ohio St.2d 168, 173 (1980), quoting *Farrand v. State Med. Bd.*, 151 Ohio St. 222, 224 (1949). As such, "courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession." *Id.* at syllabus.

{¶ 40} Courts of common pleas must also accord deference "to the administrative resolution of evidentiary conflicts." *Conrad* at 111. Thus, "when the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the determination of the administrative body." *Id.* However, "where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight." *Id.*

{¶ 41} Appellant does not argue that the trial court improperly accorded deference to the Board's resolution of an evidentiary conflict.  Rather, appellant states that, "although it is true that the Board is frequently afforded deference in analyzing questions of minimal standards, such an inquiry is not occurring in this case."  (Appellant's Brief at 45.)  *See Arlen* at 172.  While appellant is correct that this case does not concern a minimal standards violation under R.C. 4731.22(B)(6), she fails to explain why deference is not due to the Board's analysis of the acceptable and prevailing standards of care in the profession, under R.C. 4731.22(B)(19).  Indeed, the Board possesses the "knowledge needed to determine the acceptable standard of general medical practice."  *Pons* at 623.  *Taylor* concerned only a R.C. 4731.22(B)(19) violation, and, therein, this court noted that the "Supreme Court has specifically recognized and respected the expertise of the medical board in medical matters." *Id.* at ¶ 20, citing *Arlen*.

{¶ 42} The Board's determination of whether a physician is capable of practicing according to acceptable and prevailing standards of care in light of a physical or mental illness is entitled to deference, as it concerns a determination regarding the technical and ethical requirements of the profession.  The trial court appropriately accorded the Board's order deference.

{¶ 43} Appellant's fourth assignment of error is overruled.

### E.  Fifth Assignment of Error – Due Process

{¶ 44} Appellant's fifth assignment of error asserts that the hearing before the Board did not comport with the requirements of due process.  Appellant asserts that her due process rights were violated because the Board failed to provide her with a copy of State's Exhibit 5 fourteen days before the hearing, failed to issue the subpoenas she requested, and because the Board injected prejudicial statements into the record.

{¶ 45} "Both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution require that administrative proceedings comport with due process." *Richmond v. Ohio Bd. of Nursing*, 10th Dist. No. 12AP-328, 2013-Ohio-110, ¶ 10, citing *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46 (1990).  "Pursuant to due process, governmental agencies must provide constitutionally adequate procedures before depriving individuals of their protected liberty or property interests." *Natoli v. State Dental Bd.*, 177 Ohio

App.3d 645, 2008-Ohio-4068, ¶ 18 (10th Dist.), citing *Mathews* at 332; *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 541 (1985). Appellant has a protected property interest in her certificate to practice medicine and surgery. *See Natoli* at ¶ 19, citing *Haj-Hamed v. State Med. Bd.*, 10th Dist. No. 06AP-351, 2007-Ohio-2521, ¶ 53.

{¶ 46} "A 'fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." ' " *Natoli* at ¶ 18, quoting *Mathews* at 333, quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). "At its core, due process insists upon fundamental fairness, and the requirement to conduct a hearing implies that a fair hearing must occur." *Id.*, citing *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 24 (1981); *Clayman v. State Med. Bd.*, 133 Ohio App.3d 122, 127 (10th Dist.1999). But, "[a]bove all, ' "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." ' " *Id.*, quoting *Mathews* at 334, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The question of whether due process requirements have been satisfied presents a legal question we review de novo. *See Slorp v. Dept. of Adm. Servs.*, 10th Dist. No. 97APE08-1136 (Apr. 30, 1998); *Judd v. Meszaros*, 10th Dist. No. 10AP-1189, 2011-Ohio-4983, ¶ 19 ("Purely legal questions are subject to de novo review.").

### 1. State's Exhibit 5

{¶ 47} The Board did not produce State's Exhibit 5 until March 16, 2015, the day before the hearing. Pursuant to Ohio Adm.Code 4731-13-18(B)(1), when a party before the Board has properly requested copies of documents, "the requested copies of documents shall be provided no later than fourteen days prior to commencement of the hearing."

{¶ 48} At the hearing, appellant's attorney objected to the state's request to admit State's Exhibit 5 into the record, asserting that it was "unfair to [appellant] to give her these items the day before the hearing." (Tr. at 72.) The state asserted that it was not offering the exhibit "to prove that these things happened" but merely to establish that "they informed Dr. Noffsinger's opinion, that he asked [appellant] about them, [appellant] was given the opportunity to respond, and that they were contained in the business record." (Tr. at 69.)

{¶ 49} The trial court noted that "Exhibit 5 contains approximately 130 pages of records from [appellant's] employment at Mercer Health" and noted that the state asserted that the "copies of the Mercer Health documents were inadvertently not provided with disclosure of Dr. Noffsinger's report." (Decision & Entry at 10.) The trial court concluded that appellant could not establish prejudice from the state's failure to timely provide her with a copy of the exhibit as the Mercer Health records were "referenced and discussed in Dr. Noffsinger's report provided to Appellant on January 26, 2015," appellant "had the opportunity to cross-examine Dr. Noffsinger at the hearing regarding her employment at Mercer Health," and because appellant did not request a continuance of the hearing. (Decision & Entry at 11.)

{¶ 50} "To demonstrate a reversible denial of due process, as with any alleged error on appeal, an appellant typically must make a showing of identifiable prejudice." *In re C.W.*, 9th Dist No. 06CA0033-M, 2006-Ohio-5635, ¶ 9, citing *Estes v. Texas*, 381 U.S. 532, 542 (1965). Thus, to support reversal, the record must show affirmatively "not only that error intervened, but that such error was to the prejudice of the party seeking such a reversal." *Korn v. State Med. Bd.*, 61 Ohio App.3d 677, 686 (10th Dist.1988).

{¶ 51} In *Fattah v. State Med. Bd.*, 10th Dist. No. 93AP-601 (Mar. 10, 1994), the respondent asserted that, "because eight of the thirteen patient files were not returned to him until one week before the hearing" in violation of Ohio Adm.Code 4731-13-18(B), "he was prevented from preparing an adequate defense and, therefore, was prejudiced." *Id.* This court observed that "[a]ppellant was entitled to seek a continuance for his hearing pursuant to Ohio Adm.Code 4731-13-06, which provides that a continuance may be granted upon a showing of reasonable cause and proper diligence." *Id.* Because the respondent did not request a continuance, we found prejudice lacking. Similarly, here, appellant could have requested a continuance of the matter, pursuant to Ohio Adm.Code 4731-13-06, if she believed she needed additional time to prepare a response to State's Exhibit 5, yet she did not.

{¶ 52} Appellant asserts that, "[a]s a result of this late disclosure, [she] had no means to respond to the exhibit such as identifying other witnesses or subpoenaing other documents." (Appellant's Brief at 48.) However, appellant fails to explain what witnesses she would have identified, what documents she would have subpoenaed, or how these

witnesses or documents would have altered the outcome of the proceeding. Appellant's vague allegations of prejudice are insufficient to support her claim of a due process violation. *See Haj-Hamed* at ¶ 59 (although the state failed to identify a witness before trial, in violation of Ohio Adm.Code 4731-13-18(D), because the appellant "fail[ed] to identify how the testimony of Mr. Benedict prejudiced him or how foreknowledge of Mr. Benedict's testimony would have benefited him in the preparation of his defense," the state's violation of Ohio Adm.Code 4731-13-18(D)(2) did not "constitute[] a due process violation").

{¶ 53} As appellant has failed to demonstrate any prejudice resulting from the state's late disclosure of State's Exhibit 5, the late disclosure does not amount to a due process violation.

### 2. Subpoenas

{¶ 54} Appellant asserts that her right to due process of law was violated when the Board refused to issue the subpoenas she requested. On January 30, 2015, appellant submitted a written request asking the Board to issue two subpoenas: one to the record custodian at Mercer Health, located at 800 West Main Street, Coldwater Ohio 45828, and the other to a person "identified as 'MP' in Exhibit 3 to State's Exhibit 4., address known to Board." (Jan. 30, 2015 Request for Issuance of Subpoena at 1.) "MP" was the individual who had filed a complaint with the Board regarding appellant. Appellant asked the Board to order that the persons and materials be produced "by or before 5:00 p.m. on Friday, February 6, 2015." (Jan. 30, 2015 Request for Issuance of Subpoena at 1.)

{¶ 55} On March 3, 2015, appellant filed another request for subpoenas. The March 3, 2015 request was nearly identical to the January 30, 2015 request and similarly asked the Board to issue subpoenas to the records custodian at Mercer Health and to MP. The March 3, 2015 request initially asked the Board to order that the persons and materials be produced by February 6, 2015, but elsewhere asked the Board to order that the production occur by March 16, 2015.

{¶ 56} On March 4, 2015, the Board returned appellant's subpoena request to her. The Board explained that the subpoena request was insufficient, as it did not specify the full name of the person to be subpoenaed, did not specify the address of the person to be subpoenaed, and did not specify an accurate date and time at which the individual or

entity was to appear to produce the records.  Appellant took no action in response to the Board's letter.  The state noted at the hearing that it did not plan to "oppose the issuance of the subpoena" and explained that it "anticipated when we received this that [appellant's counsel] would simply correct the deficiency."  (Tr. at 76.)

{¶ 57} Appellant asserts that the subpoena deficiency letter was inappropriate, as it was not a motion to quash.  However, because appellant never made a proper request for a subpoena, the Board never had an obligation to issue the subpoenas.  As such, there was no subpoena in existence against which the state could have filed a motion to quash.

{¶ 58} R.C. 119.09 provides that an agency may "and upon request of any party receiving notice of the hearing * * * shall, issue a subpoena for any witness or a subpoena duces tecum to compel the production of any books, records, or papers."  "Thus, if requested by a party to an adjudicatory hearing, an administrative agency must issue a subpoena to compel the attendance of a witness or the production of documents at the hearing." *Clayton v. Bd. of Nursing*, 10th Dist. No. 13AP-726, 2014-Ohio-2077, ¶ 28.  As with other due process violations, "to secure a reversal on the basis that the administrative agency failed to issue a requested subpoena, a party must demonstrate that the failure resulted in prejudice." *Id.  See also Burneson v. Ohio State Racing Comm.*, 10th Dist. No. 08AP-794, 2009-Ohio-1103, ¶ 24.

{¶ 59} Ohio Adm.Code 4731-13-13(B) provides that, for purposes of hearings before the Board, "subpoena requests shall specify the name and address of the individual to be served and the date and time at which the individual is to appear."  Furthermore, except when leave is granted, "subpoena requests are to be filed with the board * * * at least fourteen days in advance of the requested date of compliance."  Ohio Adm.Code 4731-13-13(C).[1]  Appellant did not seek leave under Ohio Adm.Code 4731-13-13(C).

{¶ 60} With regard to both the January 30 and March 3, 2015 requests asking the Board to issue a subpoena to MP, address unknown, this request violated Ohio Adm.Code 4731-13-13(B)'s requirement that the subpoena request specify the name and address of the individual to be served.  Regarding the January 30, 2015 request that the Board issue

---

[1] Ohio Adm.Code 4731-13-13(C) was amended effective July 31, 2016.  The new version requires subpoena requests to be filed at least 21 days in advance of the requested date of compliance.  The version in effect while this matter was pending, however, required subpoena requests to be filed at least 14 days in advance of the requested date of compliance.

a subpoena to the records custodian at Mercer Health, this request violated Ohio Adm.Code 4731-13-13(C)'s requirement that the subpoena request be filed at least 14 days in advance of the date of compliance.  Appellant requested compliance by February 6, 2015, only seven days after the January 30, 2015 request date.  Although the March 3, 2015 request was internally inconsistent regarding the date of compliance, either date violated Ohio Adm.Code 4731-13-13(C).  The February 6, 2015 compliance date was before the March 3, 2015 request date, and the March 16, 2015 compliance date was only 13 days after the March 3, 2015 request date.  Accordingly, as appellant failed to properly request subpoenas under Ohio Adm.Code 4731-13-13, the Board did not violate appellant's due process rights by failing to issue the subpoenas.

{¶ 61} Furthermore, appellant fails to identify how she was prejudiced by the Board's refusal to issue the subpoenas.  Appellant does not explain how she would have structured her defense differently or how the outcome of the proceeding would have differed if the Board had issued the subpoenas.  Notably, appellant received the Mercer Health records from the state the day before the hearing and did not request a continuance to further develop her defense in light of those documents.  Regarding MP, appellant was not entitled to receive any information about MP or his complaint to the Board.  R.C. 4731.22(F)(5) provides that a complaint to the Board "is confidential and not subject to discovery" and obligates the Board to not "make public the names or any other identifying information about patients or complainants unless proper consent is given." *Id.  See also State Med. Bd. v. Murray*, 66 Ohio St.3d 527, 536 (1993).  Accordingly, we find no due process violation resulting from the Board's refusal to issue appellant's requested subpoenas.

### 3. Prejudicial Statements

{¶ 62} Appellant lastly asserts that her due process rights were violated when the Board injected prejudicial statements into the record without any intention of substantiation.  Appellant's contentions here relate to MP's complaint, which the Board referenced in the September 10, 2014 notice of opportunity letter and the Board's March 5, 2014 letter to appellant.  However, because the complaint was one of the pieces of information the Board relied on to order appellant to submit to psychological examination, the Board did not err by referring to the complaint in those letters.  MP's

complaint generally states that he took his mother to see appellant for an appointment, that appellant yelled at MP several times, and made him leave the office. The state did not move to admit MP's complaint into the record.

{¶ 63} Appellant asserts that she was prejudiced by the references to MP's complaint because the lower court relied "on this misinformation in affirming the Board's Order.  Decision & Entry at 12."  (Appellant's Brief at 54.)  However, the trial court referenced MP's statement only to address appellant's due process argument that the "Board relied on an unsubstantiated allegation."  (Decision & Entry at 12.)  The trial court noted that, while appellant objected "to references to the incident with MP elsewhere in the record, [appellant] admitted during her interview with Dr. Noffsinger that she had lost her temper and yelled at the patient."  (Decision & Entry at 12-13.)  Indeed, appellant told Dr. Noffsinger during her interview that "she did confront the person several times, that she lost her temper.  She believed that the male was taking advantage of his mother financially, and that she called the police and had him taken away from the practice."  (Tr. at 43.)  The lower court concluded that any references to MP's statement in the record did not violate appellant's right to due process.

{¶ 64} Dr. Noffsinger considered MP's statement along with several other documents when evaluating appellant.  (*See* State's Ex. 3 at 1-2.)  Dr. Noffsinger explained that MP's complaint was "just one piece in a long line of problems like this.  So it wasn't critical, no."  (Tr. at 43.)  Dr. Noffsinger testified that, even without MP's complaint, his diagnosis of appellant would have been the same.  Although appellant claims that it is "simply not possible for a person to pretend not to know certain information after they know it," she fails to cite to any support for that proposition.  (Appellant's Brief at 55.)  Dr. Noffsinger is a licensed professional, and he personally examined appellant before diagnosing her with persistent depressive disorder.  As such, even in the absence of MP's statement, Dr. Noffsinger's examination of appellant provided him with sufficient information on which to diagnose her and conclude that her mental disorder rendered her unable to practice.  Notably, appellant did not ask Dr. Noffsinger any questions about MP's complaint during cross-examination.

{¶ 65} Appellant has not established any prejudice resulting from the references to MP's complaint in the record.  As such, appellant has failed to establish any due process violation.

{¶ 66} Based on the foregoing, appellant's fifth assignment of error is overruled.

## IV.  CONCLUSION

{¶ 67} Having overruled appellant's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and LUPER SCHUSTER, JJ., concur.

_____