[Cite as *Seman v. State Med. Bd. of Ohio*, 2020-Ohio-3342.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Christopher R. Seman, D.O.,        :

      Appellant-Appellant,      :

                                     No. 19AP-613

v.                             :          (C.P.C. No. 18CV-7876)

State Medical Board of Ohio,      :       (REGULAR CALENDAR)

      Appellee-Appellee.        :

D E C I S I O N

Rendered on June 16, 2020

**On brief:** *Dinsmore & Shohl, LLP, Eric J. Plinke*, and *Heidi W. Dorn*, for appellant.

**On brief:** *Dave Yost*, Attorney General, and *Melinda R. Snyder*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Appellant-appellant, Christopher R. Seman, D.O., appeals from the judgment of the Franklin County Court of Common Pleas affirming an order of appellee-appellee, State Medical Board of Ohio ("board"), to suspend appellant's license to practice medicine for an indefinite period, not less than one year. For the following reasons, we affirm the decision of the court of common pleas.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant has been licensed to practice medicine in the state of Ohio since 1999. Between 2002 to 2012, appellant was board certified in general psychiatry, child psychiatry, and family practice. In 2010, appellant began working as an independent contractor at Columbiana County Counseling Center. In and around 2012, Patient 1 began

working at the counseling center in the children's division as a youth community psychiatric support treatment provider ("case manager"). On or about March 9, 2015, appellant self-reported to the board that he had engaged in a sexual relationship with Patient 1. On June 1, 2017, appellant participated in a board deposition regarding the affair.

{¶ 3} On September 13, 2017, the board issued a notice to appellant stating in relevant part:

> On or about March 9, 2015, you self-reported to the Board and subsequently confirmed to a Board Investigator that you engaged in sexual conduct with Patient 1, who was also a co-worker. On or about June 1, 2017, you stated under oath that you had provided non-controlled prescriptions without maintaining a patient record for and without performing an examination of Patient 1. You further stated that you engaged in a sexual conduct with Patient 1 from approximately October 2013 to January 2015. The prescriptions that you wrote for Patient 1 (including, Orth[o] Tri-Cyclen on December 6, 2013, and January 10, 2014; Augmentin on December 23, 2013; Fluconazole on November 6, 2014, and January 9, 2015; and Bupropion on January 12, 2015) indicate that you provided medical care to her during the time you acknowledged engaging in sexual conduct with her.

(Sept. 13, 2017 Notice.)

{¶ 4} Based on these facts, the board alleged a violation of Ohio Adm.Code 4731-26-02, commonly referred to as the "sexual misconduct rule." The letter advised appellant that he was entitled to a hearing, which appellant requested.

{¶ 5} On April 3, 2018, an administrative hearing was held on the matter. An additional day of the hearing was held on April 24, 2018 at appellant's request. Appellant and Patient 1 were the only witnesses to testify at the proceeding. Patient 1 testified that she met appellant within her first few weeks at the counseling center. Appellant and Patient 1 would regularly work together on cases and became friends. Patient 1 testified that in summer 2013, appellant began to show interest in her personally by inviting her to lunch at his office and would call regarding subjects not related to work. Appellant testified that in October 2013, the relationship with Patient 1 became romantic. Within one month of having sexual intercourse, appellant wrote Patient 1 a prescription for Ortho Tri-Cyclen, a form of birth control. During the 18-month relationship, they carried on their affair at the office, a hotel, and at Patient 1's home.

{¶ 6} Appellant testified that he did not keep patient records for Patient 1, conduct a physical, take her medical history, keep a chart, and did not know whether she was also receiving prescriptions from her primary care physician while prescribing her medications. Appellant testified that during their relationship, he wrote Patient 1 six prescriptions including birth control, antibiotics, and an antidepressant. Appellant also conceded that he never performed a psychiatric examination on Patient 1 about her diagnosis for anxiety before prescribing the antidepressant. Appellant stated "I lost objectivity before I even wrote these prescriptions for her. The whole relationship was a loss of objectivity. It was a boundary violation, not just from a doctor/patient perspective but from a professional-person-you-work-with perspective having relationships with people at work." (April 3, 2018 Tr. at 48.)

{¶ 7} Patient 1 testified appellant was in a superior position at work because he was a psychiatrist and she was a case manager. Patient 1 stated she felt appellant was trying to cut out her primary care physician by "taking over (her) medical care pretty much. * * * So I grew out of that relationship with my doctor." (Tr. at 95.) Patient 1 testified she began to trust appellant more as she confided in him about personal matters. "I began to feel more dependent on him to normalize or almost for permission to feel a certain way." (Tr. at 97.) In early 2015, Patient 1 informed appellant she was pregnant. After a blood test confirmed the pregnancy, appellant disclosed the affair to his wife and self-reported to the board.

{¶ 8} Throughout the proceeding, the hearing examiner overruled appellant's objections permitting testimony concerning appellant's disclosure to third parties of the affair, his disclosure of Patient 1's health care information, and whether Patient 1 was considering an abortion. Appellant moved to continue the hearing to obtain new information, which was granted in part allowing appellant time to identify text messages to respond to these allegations. When the hearing resumed, appellant stated he was unable to obtain this information based on the age of the messages.

{¶ 9} On August 1, 2018, the hearing examiner issued a report and recommendation. While the original hearing examiner, Danielle Blue, left the board prior to the report being issued, another hearing examiner, Rhonda Shamansky, reviewed the record and ultimately issued the report and recommendation. The hearing examiner concluded that appellant was in violation of Ohio Adm.Code 4731-26-02 and recommended

appellant be suspended for at least one year "with conditions for reinstatement, followed by a period of probation." (Aug. 1, 2018 Report & Recommendation at 26.) Appellant filed objections to the report and recommendation on August 16, 2018.

{¶ 10} The board considered appellant's objections at the September 12, 2018 meeting. Dr. Michael Schottenstein summarized the case and stated appellant used prescribing medications as "manipulative behavior designed to maintain the relationship" and as a "tool with which to bind Patient 1 to him." (Sept. 12, 2018 Bd. Minutes at 24442, 24443.) The board ultimately voted unanimously to adopt the hearing examiner's findings of fact and conclusions of law. The board imposed an indefinite suspension (of no less than one year) of appellant's medical license with conditions for reinstatement, followed by a probationary period of at least one year. The matter was appealed to the Franklin County Court of Common Pleas.

{¶ 11} On August 16, 2019, the trial court overruled appellant's seven assignments of error and affirmed the board's order finding the ruling was based on reliable, probative, and substantial evidence. Relevant to the instant appeal, the trial court found the testimony concerning appellant's disclosures to third parties of Patient 1's pregnancy, her personal health information, their workplace relationship, and that Patient 1 was considering an abortion were aggravating factors pursuant to the board's rules and did not constitute a due process violation. The trial court also concluded these disclosures were relevant evidence to the issue of whether appellant exploited Patient 1 and any error in admitting evidence that could have constituted another violation was harmless because appellant acknowledged the conduct and was only punished for the single violation. "The notice informed Appellant that all the information surrounding the relationship and the prescribing of the drugs would be an issue." (Aug. 16, 2019 Decision & Entry at 5.) The trial court also found Dr. Schottenstein's comments at the meeting did not constitute new evidence or modify the hearing examiner's findings by allegedly making an inference of exploitation to create a violation of the board's sexual misconduct rule.

{¶ 12} Regarding appellant's claim that there was no evidence of exploitation since the relationship predated any treatment, the trial court found that even if the relationship predated any medical care, "*continuing* the sexual relationship while prescribing medications exploits the physician-patient relationship." (Emphasis sic.) (Decision &

Entry at 8.) The trial court noted while it was not convinced that evidence of explicit exploitation was required because a sexual relationship between a physician and patient is inherently exploitative, the trial court concluded there was ample evidence of exploitation in Patient 1's testimony. "To adopt the Appellant's interpretation of the rule would ignore the patently obvious fact that a physician can easily use his or her influence over the patient to maintain, or prolong, a pre-existing sexual relationship." (Decision & Entry at 8.) Finally, the trial court concluded Patient 1 did not qualify as a "family member" under Ohio Adm.Code 4731-11-08(C).

{¶ 13} Appellant filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

[1.] The Trial Court Erred in Failing to Find a Due Process Violation from the Board's Proceedings Which Exceeded the Scope of the ORC Ch. 119.07 Notice and Violated Due Process.

[2.] The Board Order is Contrary to Law as the Order was Based on a New and Unsupported Allegation Made First at the Board Meeting.

[3.] The Board's Order Is Contrary To Law Because The Board Found A Violation of The Board's Sexual Misconduct Rule Where No Evidence of Exploitation Exists And The Finding Conflicted With Another Board Rule.

## III. STANDARD OF REVIEW

{¶ 15} Pursuant to R.C. 119.12, a common pleas court, when reviewing an order of an administrative agency, must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). The Supreme Court of Ohio has defined the concepts of reliable, probative, and substantial evidence as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 16} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12.

{¶ 17} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.* Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court. *Id.* An appellate court, however, has plenary review of purely legal questions. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP-708, 2003-Ohio-418, ¶ 15.

## IV. LEGAL ANALYSIS

### A. First and Second Assignments of Error

{¶ 18} For clarity of analysis, we will address the first and second assignments of error together. Appellant makes a multitude of claims in support of his due process argument. Appellant first asserts his due process rights were violated because the notice failed to include allegations appellant made disclosures to third parties regarding the affair, the personal health information of Patient 1, whether Patient 1 was considering an abortion, "positions of the Catholic Church on adultery and birth control," and appellant's conduct in "violation of his faith." (Appellant's Brief at 10.) Appellant also argues "Dr. Schottenstein's finding that Dr. Seman was binding Patient 1 to him through six prescriptions and separating her from her primary physician" was new evidence and constituted a violation of appellant's due process rights. (Appellant's Brief at 11.) For the reasons that follow, we disagree with appellant.

{¶ 19} The Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution mandate that administrative proceedings comport with due process. *Richmond v. Ohio Bd. of Nursing*, 10th Dist. No. 12AP-328, 2013-Ohio-110, ¶ 10, citing *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46 (1990). "Pursuant to due process, governmental agencies must provide constitutionally adequate procedures before depriving individuals of their protected liberty or property interests." *Natoli v. Ohio State Dental Bd.*, 10th Dist. No. 08AP-81, 2008-Ohio-4068, ¶ 18, citing *Mathews* at 332. The tenant of fundamental fairness is at the core of due process. *Natoli* at ¶ 18, citing *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 24 (1981).

{¶ 20} Appellant has a protected property interest in his certificate to practice medicine. *Flynn v. State Med. Bd.*, 10th Dist. No. 16AP-29, 2016-Ohio-5903, ¶ 45, citing *Natoli* at ¶ 19, citing *Haj-Hamed v. State Med. Bd.*, 10th Dist. No. 06AP-351, 2007-Ohio-2521, ¶ 53. "A 'fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." ' " *Natoli* at ¶ 18, quoting *Mathews* at 333, quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The question of whether due process requirements have been satisfied presents a legal question we review de novo. *Flynn* at ¶ 46, quoting *Judd v. Meszaros*, 10th Dist. No. 10AP-1189, 2011-Ohio-4983, ¶ 19 (" 'Purely legal questions are subject to de novo review.' ").

{¶ 21} R.C. 119.07 states, in relevant part, "[notice] shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days of the time of mailing the notice." A notice consistent with R.C. 119.07 "satisfies these procedural due process requirements because it sets forth a process reasonably calculated to apprise the party of the charges against him and the opportunity to request a hearing." *Richmond* at ¶ 11, quoting *Kellough v. Ohio State Bd. of Edn.*, 10th Dist. No. 10AP-419, 2011-Ohio-431, ¶ 36. Appellant must also show that any violation of due process resulted in prejudice. *Griffin v. State Med. Bd. of Ohio*, 10th Dist. No. 11AP-174, 2011-Ohio-6089, ¶ 26.

### 1. Third-Party Disclosures

{¶ 22} Appellant asserts that his due process rights were violated when the notice failed to include allegations that appellant made disclosures to third parties regarding the affair, the personal health information of Patient 1, and whether Patient 1 was considering an abortion. As an initial matter, appellant mistakes the relevant language of the statute. Appellant asserts that R.C. 119.07 reads "[notice] shall include the charges *and* other reasons for the proposed action." (Emphasis added.) (Appellant's Brief at 8; Reply Brief at 4.) The statute, in fact, states "[notice] shall include the charges *or* other reasons for the proposed action." (Emphasis added.) R.C. 119.07. By enacting a disjunctive versus a conjunctive notice requirement, the General Assembly created a far more relaxed standard than appellant has alleged.

{¶ 23} After a review of the record and relevant facts, we find appellant's notice was consistent with R.C. 119.07 and satisfied all due process requirements. The notice included the charge against appellant, identified the purported violation of Ohio Adm.Code 4731-26-02, provided broad and specific allegations regarding appellant writing non-controlled prescriptions while engaging in sexual conduct with Patient 1 from approximately October 2013 to January 2015, and informed appellant of his right to a hearing. Appellant was also on notice that Patient 1 would be called to testify concerning her medical treatment during the sexual relationship. As such, the evidence presented at the hearing concerning disclosures to third parties were relevant to the alleged sexual misconduct violation as aggravating factors under Ohio Adm.Code 4731-26-02.

{¶ 24} Appellant next argues that these disclosures are of such significance that they could constitute violations of the Medical Practice Act under R.C. 4731.22(B)(4) and (18) and, as such, appellant was deprived of sufficient notice and due process. This court has consistently found the board may consider aggravating circumstances, including uncharged misconduct, during the hearing. *Macheret v. State Med. Bd.*, 188 Ohio App.3d 469, 2010-Ohio-3483, ¶ 28 (10th Dist.) ("In setting the appropriate sanction for the violations alleged and proven, the Board may, as it did, take into account aggravating circumstances, including uncharged misconduct."); *Froehlich v. Ohio State Med. Bd. of Ohio*, 10th Dist. No. 15AP-666, 2016-Ohio-1035, ¶ 31 (finding a medical review board may consider aggravating circumstances, including uncharged misconduct, when considering

the appropriate sanction against the physician); *see also Columbus Bar Assn. v. Farmer*, 111 Ohio St.3d 137, 2006-Ohio-5342, ¶ 49 (finding a disciplinary board may consider misrepresentations during the investigation as an aggravating circumstance when considering what sanction to impose). While it is conceivable that these offenses could have been included as additional charges, the board is under no obligation to bring every potential violation.

{¶ 25} Finally, appellant fails to demonstrate how evidence of these aggravating factors resulted in identifiable prejudice. To support reversal of the trial court, the record must affirmatively show "that such error was to the prejudice of the party seeking such a reversal." *Korn v. State Med. Bd.*, 61 Ohio App.3d 677, 686 (10th Dist.1988); *Griffin*, 2011-Ohio-6089, at ¶ 26. Per the State Medical Board of Ohio Disciplinary Guidelines, the minimum penalty for a sexual misconduct within practice violation is an "[i]ndefinite suspension, min. 1 year, with conditions for reinstatement; discretionary probation, as appropriate, to include a boundaries course." State Med. Bd. Disciplinary Guidelines Section II.B, at 6 (Revised June 2018). Given appellant acknowledged the conduct and only received the minimum recommended penalty, appellant has failed to establish how discussion of these third-party disclosures prejudiced the outcome of the proceeding. Accordingly, we find appellant had a full and fair opportunity to prepare a defense before the hearing examiner and find no due process violation occurred.

### 2. Dr. Schottenstein's Comments

{¶ 26} Appellant next asserts his due process rights were violated when Dr. Schottenstein stated appellant used prescribing medications as "manipulative behavior designed to maintain the relationship" and as a "tool with which to bind Patient 1 to him." (Bd. Minutes at 24442, 24443.) After a review of the record and minutes from the board meeting, we find these statements constitute commentary in response of appellant's objections and not new evidence.

{¶ 27} Even if Dr. Schottenstein's comments exceeded the scope of the hearing examiner's findings, appellant can point to no evidence in the record that the board members relied on Dr. Schottenstein's remarks in forming their own conclusions. The board voted unanimously to adopt the hearing examiner's report and recommendation only sanctioning appellant for the minimum recommended penalty for a violation of Ohio

Adm.Code 4731-26-02.  Based on the forgoing, we find appellant's due process argument unpersuasive.

{¶ 28}  Accordingly, appellant's first and second assignments of error are overruled.

**B.  Third Assignment of Error**

{¶ 29}  Appellant argues the board's order was contrary to law because there was no evidence of exploitation since the sexual relationship predated the physician/patient relationship.  We disagree.

{¶ 30}  This court is more limited in its review than that of the trial court.  While the trial court must look at the evidence presented, the court of appeals must examine only if the trial court abused its discretion in finding the board's order was supported by reliable, probative, and substantial evidence.  *Pons*, 66 Ohio St.3d at 621.

{¶ 31}  As in effect at the time of the alleged violation, Ohio Adm.Code 4731-26-02 provides:

> (A)  A licensee shall not engage in sexual misconduct with a patient or key third party, as that term is defined in paragraph (C) of rule 4731-26-01 of the Administrative Code.
>
> (B) Conduct included within the definition of sexual misconduct occurring between a licensee and a former patient constitutes sexual misconduct and is prohibited if it meets any of the following criteria:
>
> (1) The conduct occurred within ninety days after the licensee-patient relationship was terminated;
>
> (2)  The conduct occurred between a psychiatrist and a person to whom the psychiatrist formerly provided psychiatric or mental health services, and the conduct is in violation of the code of ethics of the "American Psychiatric Association"; or
>
> (3)  The board determines that the conduct constitutes sexual misconduct upon consideration of the following factors:
>
> (a)  The duration of the licensee-patient relationship;
>
> (b)  The nature of the health care services provided;
>
> (c)  The lapse of time since the licensee-patient relationship ended;
>
> (d)  The extent to which the former patient confided personal or private information to the licensee;
>
> (e) The degree of emotional dependence that the former patient has or had on the licensee; and

> (f) The extent to which the licensee used or exploited the trust, knowledge, emotions, or influence derived from the previous licensee-patient relationship.

Sexual misconduct is defined as "conduct that exploits the licensee-patient relationship in a sexual way, whether verbal or physical, and may include the expression of thoughts, feelings, gestures that are sexual or that reasonably may be construed by a patient as sexual." Ohio Adm.Code 4731-26-01(H).

{¶ 32} While appellant claims that the affair predated any medical treatment, we would note that Patient 1 testified appellant examined her for a physical when she had a cold prior to the start of their sexual relationship. While appellant contends that the board "moved the goalposts" by presenting evidence that the dates of treatment predated the sexual relationship, the notice is based on appellant's disclosure of the sexual relationship to the board. (Reply Brief at 7.) Appellant's contention that this interrupted his preparation for the case is unpersuasive as he would have known about the treatment.

{¶ 33} Even if the sexual relationship with Patient 1 predated the physician/patient relationship, the trial court correctly reasoned that appellant "ignores the fact that *continuing* the sexual relationship while prescribing medications exploits the physician-patient relationship." (Decision & Entry at 8.) We agree with the trial court that to accept appellant's interpretation of the rule would ignore the possibility of a physician using his or her influence to preserve or continue a prior sexual relationship. As such, we find appellant's argument unpersuasive.

{¶ 34} Appellant next asserts Ohio Adm.Code 4731-26-02 requires evidence of exploitation, which he argues was not found in this case. The trial court found that while it did not think that evidence of explicit exploitation was required for a sexual misconduct violation, the record demonstrated ample evidence of both direct exploitation and exploitation by inference. We find the trial court did not abuse its discretion concluding there was reliable, probative, and substantial evidence of exploitation as evidenced by the admitted power imbalance between the parties, appellant's intervention in Patient 1's medical care, and Patient 1's described dependency on appellant to rationalize the relationship. Appellant only ended the affair after it was discovered Patient 1 had become pregnant. Once a blood test confirmed the pregnancy, appellant finally disclosed the affair to his wife and self-reported to the board. Because we find there was sufficient evidence of

exploitation in this case, we decline to resolve whether the trial court was ultimately correct in concluding proof of explicit exploitation was not required to constitute a violation of the sexual misconduct rule.

{¶ 35} Finally, appellant argues that Patient 1 qualifies as a "family member" under Ohio Adm.Code 4731-11-08(C) based on appellant's testimony that he lost objectivity during her treatment. We disagree. Ohio Adm.Code 4731-11-08(B) and (C) states:

> (B) Accepted and prevailing standards of care require that a physician maintain detached professional judgment when utilizing controlled substances in the treatment of family members. A physician shall utilize controlled substances when treating a family member only in an emergency situation which shall be documented in the patient's record.
>
> (C) For purposes of this rule, "family member" means a spouse, parent, child, sibling or other individual in relation to whom a physician's personal or emotional involvement may render that physician unable to exercise detached professional judgment in reaching diagnostic or therapeutic decisions.

{¶ 36} We find the trial court did not abuse its discretion concluding that Patient 1 does not fall under any of the explicit definitions of a "family member" identified in Ohio Adm.Code 4731-11-08(C). We would also note that a plain reading of Ohio Adm.Code 4731-11-08(C) makes it inconceivable that the "family member" exception was intended to provide additional protections for a physician conducting an extramarital affair.

{¶ 37} Accordingly, appellant's third assignment of error is overruled.

## V. CONCLUSION

{¶ 38} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

_____